CLIFFORD A. JONES AND LLOYD E. PERCELL, INDIVIDUALLY, AND AS COPARTNERS DBA PERCELL–JONES LEASING COMPANY, APPELLANTS, *v.* BANK OF NEVADA, A NEVADA BANKING CORPORATION, RESPONDENT.

No. 7686

May 30, 1975                                   535 P.2d 1279

*Paul V. Carelli, III,* Las Vegas, and William M. Spence, Phoenix, Arizona, for Appellants.

*Smith & O'Brien,* Las Vegas, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

On May 29, 1969, appellants-defendants, Clifford A. Jones and Lloyd E. Percell, executed a promissory note and a security agreement covering a certain Beechcraft Westwind aircraft in favor of the respondent-plaintiff, Bank of Nevada. Jones and Percell defaulted in the payment of the note, and as a result thereof the Bank took possession of the aircraft in April 1970. Bank sold the aircraft for $71,000 and thereafter instituted this action for a deficiency judgment of $75,330.56 against Jones and Percell, individually, and against the copartnership of Percell-Jones Leasing Company.

1. Bank filed its complaint in the court below on August 27, 1971. Defendants answered on October 7, 1971, asserting as their principal defense that the aircraft was not sold in a commercially reasonable manner.

The case was eventually set for trial on March 14, 1973. Two days prior thereto, however, Jones, acting as counsel for all defendants, filed a motion for a continuance, on the ground that he would be out of the country and that Percell would be absent from the State on the date of trial. The motion was granted, and the trial rescheduled for May 14, 1973.

On May 9, 1973, the defendants filed a substitution of attorneys, wherein their present counsel, Paul V. Carelli, III, was substituted in the place of Jones. At the same time, defendants' new counsel filed a motion ". . . for an order vacating that certain trial date of the above matter presently set for

May 14, 1973 . . ." The district judge granted the motion to continue the trial and permitted the association of out-of-State counsel; but the judge entered an order denying further discovery.

2.   Jones and Percell argue, first, that the trial court erred in denying them the right to engage in pretrial discovery. We turn to consider this contention. Nineteen months elapsed between the time Jones and Percell answered the complaint and the date of their second motion to continue the trial. During this period there was no request for admissions nor any attempt to take depositions nor were interrogatories submitted. There was simply no attempt on their part to move for any pretrial discovery; nor was their initial request for continuance of a trial date predicated upon the ground that more discovery time was needed. The second motion for a continuance was based on the fact that new counsel had been retained. The supporting affidavit of counsel failed to list the names and addresses of any persons sought to be deposed, the substance of the testimony to be elicited, and the materiality of the same.

The transcript reflects that Percell testified extensively at trial, although Jones was never present nor the reason for his absence indicated. Numerous exhibits were introduced by appellants. Jack Green, appellants' expert witness, voluntarily appeared and testified. A search of the record fails to disclose the prejudice complained of, or if any such existed, the record has not been preserved for our consideration on appeal.[1] Quite to the contrary, appellants' counsel announced at the time of trial that they were ready to proceed. See Heffron v. Los Angeles Transit Lines, Inc., 339 P.2d 567 (Cal.App. 1959, *hearing denied,* 1959).

A trial judge must be afforded reasonable discretion in controlling the conduct of pretrial discovery. As the court said in Heffron, *supra,* 339 P.2d at 570:

". . . Without reasonable judicial control, the instruments of discovery are susceptible to abuse and may be utilized for purposes of delay, annoyance and harassment. . . ."

And, again, the rule was appropriately stated in Price v. H. B. Green Transportation Line, Inc., 287 F.2d 363, 366 (7th Cir. 1961):

---

[1]Appellants' first trial brief, filed some six weeks after trial and which has been made a part of the record on appeal, asserts no claim of prejudice or inability on appellants' part to present their defense to this action.

"The record shows that the defendant made no effort to employ discovery procedures until the cause had been set for trial. Under these circumstances we find that there was no error by the District Judge in refusing to allow the defendant to take the depositions of the plaintiff's 'examining physicians.' . . ."

And so, in the instant case, we hold that the district judge's ruling was a reasonable exercise of the court's discretion in the proper and necessary control of discovery proceedings.

3. We move to the second and fundamental issue presented by this appeal—whether Bank's disposition of the aircraft satisfied the requirements of the Uniform Commercial Code as adopted by the State of Nevada.

Specifically, the Code sections involved are NRS 104.9504 (3)[2] and NRS 104.9507(2),[3] wherein "commercial reasonableness" is the controlling factor. The answer is predicated upon the particular circumstances of the disposition of the aircraft.

Following its repossession on April 9, 1970, and notification to appellants that the plane would be sold on or after April 24, 1970, Bank caused advertisements to be placed in General

---

[2]NRS 104.9504(3), in relevant part:
"3. Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. . . ."

[3]NRS 104.9507(2):
"2. The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable."

Aviation News, Trade-A-Plane, the Wall Street Journal, the National Observer, and the major newspapers in Los Angeles, Denver, Salt Lake City, Chicago, and New York. Bank caused about 2,000 brochures to be prepared and distributed to approximately 240 sales organizations in the United States, to fixed-based operators who were qualified to operate this type of airplane, and to major sales organizations of used aircraft. Bank further hired a sales representative to assist in marketing the aircraft. Those offers received were either contingent upon further financing or the offers were too low for consideration.

On June 22, 1971, the plane was sold to Omni Aircraft, an aircraft broker in Arizona, at a price of $71,000, the highest cash offer submitted. This aircraft broker, in turn, resold the plane for $123,000, exclusive of broker's commission, but not before it was required to expend about $33,000 in necessary modifications to effect the resale of the aircraft. The plane was an unpressurized converted military unit built in the 1950s.

Although various estimates of the plane's worth appear in the record, the price obtained upon sale is not the sole determinative factor. NRS 104.9507(2), *supra.*

The record before us supports the following calculations:

| | |
|---|---:|
| Sales price received by Omni Aircraft | $123,000 |
| Commission (based upon 10% of first $100,000 and 5% of next $400,000) | 11,150 |
| | $111,850 |
| Cost of modifications | 33,000 |
| | $ 78,850 |
| Bank of Nevada's sale price | 71,000 |
| Difference | $ 7,850 |

Accepting appellants' argument that the sales commission would not exceed 5%, the resale of the aircraft by Omni could have resulted only in a net sale price of $83,850, about $12,850 more than Bank was able to realize. Such an increase does not take into consideration the appreciation in value that would normally result from $33,000 worth of modifications to the aircraft.

Grissom Raines, sales manager for Hughes Aviation Services, testified that he was personally familiar with the airplane and that he considered it to be a difficult type to sell, that the aircraft sales market between April 1970 and June 1971 was depressed, and that the efforts of Bank to sell the craft were steps customarily taken by dealers and salesmen in selling planes.

Even Percell testified that during this period he sold approximately 35 planes owned by his own company at prices far below their actual value.

Although Percell testified that other efforts should have been made by Bank to sell the plane, the trial judge found that the sale to Omni Aircraft met the UCC test for commercial reasonableness:

". . . One recognized method of disposing of repossessed collateral is for the secured party to sell the collateral to or through a dealer—a method which in the long run may realize better average returns since the secured party does not usually maintain its own facilities for making such sales. Such a method of sale, fairly conducted, is recognized as commercially reasonable. . . ." Uniform Commercial Code § 9–507, Comment (NRS 104.9507, *supra*).

Where the trier of fact has made a determination upon the basis of conflicting evidence, that determination may not be disturbed on appeal if supported by substantial evidence. Fletcher v. Fletcher, 89 Nev. 540, 516 P.2d 103 (1973); Savini Constr. Co. v. A & K Earthmovers, Inc., 88 Nev. 5, 492 P.2d 125 (1972); Brandon v. Travitsky, 86 Nev. 613, 472 P.2d 353 (1970). The record in the instant case does contain substantial evidence to support the district judge's finding that Bank's disposition of the subject aircraft was commercially reasonable and satisfied the standards of the Uniform Commercial Code.

Upon review of the remaining assignments of error, we find none affecting substantial rights of the parties. NRCP 61. Therefore, the judgment below is affirmed.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.