DIVERSIFIED CAPITAL CORPORATION, A DELAWARE CORPORATION, APPELLANT, v. CITY OF NORTH LAS VEGAS, A MUNICIPAL CORPORATION, AND TITLE INSURANCE AND TRUST COMPANY OF CALIFORNIA, A CALIFORNIA CORPORATION, RESPONDENTS. BANK OF NEVADA, A NEVADA BANKING CORPORATION, JOINED RESPONDENT.

No. 8181

November 10, 1976                    555 P.2d 1236

*Lionel, Sawyer, Collins & Wartman,* and *Paul R. Hejman-owski,* of Las Vegas, for Appellant.

*Paul H. Schofield,* City Attorney, of North Las Vegas, for City of North Las Vegas.

*Smith & O'Brien,* of Las Vegas, for Bank of Nevada.

## OPINION

By the Court, ZENOFF, J.:

Prior to 1970, the City of North Las Vegas expended approximately $2,100,000.00 for general improvements to a tract of land within its boundaries known as Nellis Industrial Park Unit No. 1. Proceeds from the sale of bonds by the City were utilized to implement the improvements and an improvement district, comprised solely of the land within the park, was created against which assessments were levied to secure payment of the bonds.

In 1970, Diversified Capital Corporation owned the land occupied by the industrial park. It acquired the land from owners who had permitted the assessments to fall in arrears. The park at that time sat virtually unoccupied and Diversified was without sufficient funds to pay the assessments. Negotiations between Diversified and Milton Weiss (Director of Finance for the City) resulted in the execution of a "memorandum" on April 2, 1970, purporting to set forth the terms of a settlement between the City and Diversified in connection

with litigation then pending involving the delinquent assessments. That memorandum apparently constituted the foundation of a formal agreement executed on August 8, 1970, by the mayor of the City and representatives of Diversified.

The pertinent terms of the August 8 agreement provided that the City would issue a series of interim warrants in the amount of $2,425,000.00. The proceeds from the sale thereof were earmarked to provide funds for construction of further improvements and to provide a sufficient surplus so that no assessments would have to be paid for a period of two years. The proceeds which were earmarked for the construction of further physical improvements to the park ($1,100,000.00) were placed in an account designated "project fund." The agreement itemized the work which was to be done and paid for out of the project fund and provided that it should be "completed at the earliest practicable time."

Contemporaneously with the execution of the agreement of August 8, Diversified executed a deed of trust naming the City as beneficiary and encumbering the property in the amount of $1,000,000.00. The deed of trust was intended to secure payment of the assessments when the same became due.

The city council subsequently approved the August 8 agreement in accordance with the provisions of the applicable statutes and promulgated appropriate ordinances to effectuate its purposes.

In December of 1970, before any portion of the project fund was disbursed for any of the purposes specified in the agreement, the city council imposed a moratorium on the expenditure of any funds in connection with improvements to the industrial park. The resolution imposing the moratorium provided that funds for improvements could be disbursed only where a tenant had committed himself to the construction and occupancy of a building and had obtained valid lender commitments for construction financing.

As of the date this lawsuit was commenced, only an insignificant amount had been disbursed from the project fund to accomplish the purposes specified in the agreement. Substantial amounts have been withdrawn from the fund to pay interest on the bonds and warrants and lesser sums have been withdrawn to reimburse the City for attorneys' fees and litigation expenses arising from its relationship with Diversified. Funds also have been withdrawn from the project fund to pay the salaries of private guards hired to protect the park from vandalism.

The first assessment owed by Diversified pursuant to the

agreement of August 8 became due in March of 1973. Diversified was unable to pay that assessment or the following one which became due in December of the same year. Consequently, on February 12, 1974, the City commenced to exercise its power of sale under the deed of trust.

Diversified initiated this action seeking to permanently enjoin the trustees' sale. Although a preliminary injunction to that effect was granted, Diversified ultimately was denied all relief and the City was awarded $1,000.00 in attorneys' fees and an undetermined amount to cover the trustees' fees upon sale of the property. The judgment of the lower court was stayed pending the outcome of this appeal.

The principal issue on this appeal is whether the City may properly exercise the power of sale granted to it under the deed of trust executed in conjunction with the agreement of August 8, 1970.

1.  The trial court concluded that the City complied fully with the terms of the agreement. Diversified contends that such a conclusion is unsupported by the evidence and that, in fact, the evidence in the record is capable of supporting only a contrary conclusion.

The agreement of August 8 provided that certain itemized work would be performed by the City to improve the park site and that it would be "completed at the earliest practicable time." Diversified argues that the moratorium subsequently declared by the City violated the express terms of the agreement and completely frustrated the purposes sought to be achieved thereby.

There is nothing in the record which indicates that at the time the agreement was executed the parties intended anything other than that the work specified therein should be commenced forthwith. Certainly, the agreement on its face did not contemplate the unilateral declaration of a moratorium by the City ostensibly absolving it from the responsibility of performing the work specified in the agreement until certain further conditions, not mentioned in the agreement, were met by Diversified. A municipality may not unilaterally alter its contractual obligations to its benefit through subsequent enactment of ordinances or by adoption of resolutions. Arlington Hts. Nat. Bank v. Village of Arlington Hts., 213 N.E.2d 264 (Ill. 1966).

The additional extra-contractual conditions imposed on Diversified by the City before the project fund could be

utilized for the purpose for which it was intended were invalid. As a result of the moratorium only an insignificant portion of the work specified in the agreement was completed. The fact that the park existed in an unimproved condition undoubtedly adversely affected its salability and consequently frustrated Diversified's efforts to obtain tenants upon whom it relied to generate funds to pay the assessments.

The record is void of any suggestion that the parties contemplated or intended that a moratorium be imposed subsequent to the execution of the agreement. To construe the plain language of the agreement to countenance the moratorium would be a creative exercise indeed. Succinctly stated, the conclusion that the City complied in all respects with the provisions of the August 8 agreement simply is not supported by the record. See Cardan Overseas, Ltd. v. Harris, 92 Nev. Adv. Op. 15 (1976).

2. By entering into the agreement of August 8 and subsequently declaring the moratorium, the City effectively increased the assessment on the land within the industrial park twofold but spent only an insignificant fraction of the increase on actual improvements. The park lies today in the same condition as it was in 1970 yet is subject to assessments for improvements in an amount in excess of $5,000,000.00, more than double the amount of assessments which encumbered the property in 1970. Over $1,000,000.00 of the increase is attributable to improvements which were promised but never completed. In short, the City now seeks to compel Diversified to pay for over $1,000,000.00 in improvements to its land which were never made.

The law prohibits recovery of assessments by a municipality for improvements which greatly exceed the benefit bestowed upon the property. Norwood v. Baker, 172 U.S. 269 (1898); City of Reno v. Folsom, 86 Nev. 39, 464 P.2d 454 (1970). Here, we are not faced with the problem of weighing the benefit occasioned by the improvements to the property against the amount of the assessment. It is undisputed that virtually no improvements were made. Thus, there is no question but that the assessments exceed the value of any benefit bestowed upon the property. Under such circumstances, an injunction prohibiting the collection of such assessments is appropriate. Maxwell v. City of Santa Rosa, 347 P.2d 678 (Cal. 1959); City and County of Denver v. Greenspoon, 344 P.2d 679 (Colo. 1959).

The funds earmarked for the construction of improvements to the industrial park site were held by the City in a type of constructive trust for the benefit of the land against which assessments to pay for the improvements had been levied. The City was obligated to utilize the funds to construct the improvements itemized in the August 8 agreement. Diversified, as owner of the land subject to the assessments, acquired equitable title to the project fund as a result of the City's failure to construct the improvements as promised. Consequently, the City was in no position to declare default on any assessment until Diversified was given credit for the full amount of the project fund. Cf. Crone v. Johnson, 403 S.W.2d 738 (Ark. 1966); Savings Bank v. Asbury, 48 P. 1081 (Cal. 1897); Ball v. Bankers Life Co., 103 S.W.2d 1111 (Tex.Civ.App. 1937); Salinger v. Lincoln Nat. Life Ins. Co., 52 F.2d 1080 (8th Cir. 1931).

Before the City should be permitted to compel a sale of the land under the deed of trust, it first should be required to reduce the assessments levied against the improvement district in an amount equal to the amount earmarked for improvements by the August 8 agreement plus accrued interest on that sum. From that amount there should be subtracted any money actually expended for improvements or for the direct benefit of the district. That sum would not include expenditures for such items as the salaries of guards[1] hired to protect the site from vandalism or attorneys' fees and litigation expenses incurred by reason of certain lawsuits pending against Diversified.

The project fund was not created for the benefit of the City or of Diversified but was created for the benefit of the land located within the improvement district. See Heavens v. King County Rural Library District, 404 P.2d 453 (Wash. 1965). Disbursements from the fund which resulted in no improvement or direct benefit to the property within the district cannot be the subject of an assessment. City of Reno v. Folsom, supra; Heavens v. King County Rural Library District, supra; Town of Fort Lupton v. Union Pacific R.R. Co., 399 P.2d 248

---

[1]The City hired off-duty police officers to patrol the park in lieu of providing public police protection. No reason for such action appears in the record. Since the park was located within the confines of the city limits it should have been afforded the same police protection as any other parcel of property similarly located.

(Colo. 1965); Smith v. City of Bozeman, 398 P.2d 462 (Mont. 1965); Application of Erick Hospital District, 444 P.2d 216 (Okl. 1968).

There being insufficient evidence in the record for us to ascertain the amount which should be credited against the assessments presently encumbering the subject property, we remand the case to the trial court to make such determination. The trial court is directed to calculate the amount remaining in the project fund (including accrued interest) plus all amounts which were disbursed therefrom for which no improvements or direct benefit to the property can be shown. The total should be subtracted from the amount of all unpaid assessments. If a surplus in the project fund remains, it should be credited against future assessments and the trustees' sale should be enjoined unless or until Diversified defaults again on the assessments. If the unpaid assessments exceed the amount in the project fund as computed by the trial court, the trustees' sale shall proceed in accordance with the provisions of the agreement of August 8.

Under the circumstances, the award of attorneys' fees to the City by the lower court cannot be sustained. However, if—after the trial court has acted in accordance with the instructions set forth above—a trustees' sale is still necessary, Diversified shall bear the costs thereof.

Reversed and remanded with instructions.

BATJER, MOWBRAY, and THOMPSON, JJ., concur.

GUNDERSON, C. J., concurring and dissenting:

I accept the opinion prepared by Justice Zenoff insofar as it decides that the City acted improperly. I do not agree with this court's "instructions," which in my view do not adequately redress the wrongs in question.

If the City had performed in accordance with the obligations which the majority find it breached, appellant might not, and quite probably would not, be in apparent default. Thus, seemingly, the City should not be allowed to foreclose following the arithmetical adjustments prescribed by this court. Instead, an injunction should issue against any foreclosure until the City has fully and completely performed the obligations of the parties' agreement according to their tenor.

The latter is the relief sought in this appeal, and, in my view,

is the relief to which appellant is entitled in light of the wrongs the majority determine have occurred.