DIVERSIFIED CAPITAL CORPORATION, A Delaware Corporation, Appellant, v. CITY OF NORTH LAS VEGAS, A Municipal Corporation, Respondent.

No. 10558

January 12, 1979                                    590 P.2d 146

---

16

[Rehearing denied February 1, 1979]

*Lionel Sawyer and Collins,* and *Paul R. Hejmanowski,* Las Vegas, for Appellant.

*Paul H. Schofield,* Las Vegas, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

Diversified, a trustor, commenced this action in August 1973, seeking to permanently enjoin respondents' exercise of a power of sale in a deed of trust. Asserting that Diversified was in default in payment of certain assessments secured by the

deed of trust, City, the beneficiary, counterclaimed for declaratory relief and damages. Diversified was granted a preliminary injunction but permanent relief was ultimately denied. Thereafter, Diversified appealed.

On appeal, Diversified argued that by unilaterally imposing a moratorium on project expenditures, the City breached its prior agreement to provide funds for improvements to appellant's industrial park.[1] In addition, Diversified contended that the City's assessments were excessive and attributable to improvements which were promised but never realized. We agreed, and reversed and remanded to the district court, with instructions,

> to calculate the amount remaining in the project fund (including accrued interest) plus all amounts which were disbursed therefrom for which no improvements or direct benefit to the property can be shown. The total should be subtracted from the amount of all unpaid assessments. If a surplus in the project fund remains, it should be credited against future assessments and the trustees' sale should be enjoined unless or until Diversified defaults again on the assessments. If the unpaid assessments exceed the amount in the project fund as computed by the trial court, the trustees' sale shall proceed in accordance with the terms of the agreement. Diversified Capital v. City No. Las Vegas, 92 Nev. 621, 628, 555 P.2d 1236, 1241 (1976).

Following remand, Diversified moved for leave to file an amended and supplemental complaint and to reopen discovery. Both motions were denied on the basis that the remand *with instructions* precluded the district court from entertaining any new matters. No interlocutory relief was sought in this Court.

Thereafter, the trial court appointed W. Wayne Bunker, a certified public accountant, "to take and receive and collect evidence" as directed in the order of reference. The order specified and limited the powers and duties of the master.[2] NRCP 53(c).

---

[1]The complicated contractual and financial arrangements between these litigants commenced in 1970, and are explicated in our prior opinion. See Diversified Capital v. City No. Las Vegas, 92 Nev. 621, 555 P.2d 1236 (1976).

[2]The appointment was with the consent of the parties. The master was ordered to prepare schedules from the evidence he collected setting forth (1) all assessments due, pursuant to the special improvement assessment district; (2) all payments of such assessments; (3) all interest earned on the project fund of the special improvement assessment district; (4) all disbursements made from the project fund; (5) the amount remaining in the project fund for which no improvement or direct benefit to the property could be shown.

The master submitted his report on October 11, 1977, and a preliminary evidentiary hearing thereon was held. Diversified subsequently filed written objections in the district court.[3]

Further evidentiary hearings were held, and on November 17, 1977, the district court, in compliance with NRCP 53, entered its findings of fact, conclusions of law and judgment, generally overruling Diversified's objections, adopting, with minor modifications, the report of the special master. The court determined appellant's net assessment delinquency to be $1,445,562.21, that no surplus remained in the project fund, and that the trustees' sale should therefore proceed.

Thereafter, on January 16, 1978, the district court entered an order directing that collection of the delinquent assessments be made by foreclosure only, thereby relieving Diversified of personal liability. From this amended judgment, Diversified pursues its second appeal.

Several issues are presented for our consideration: (1) Did the master's failure to conduct formal evidentiary hearings constitute reversible error? (2) Was the master's report clearly erroneous? (3) Was the denial of appellant's motion to file amended and supplemental pleadings reversible error? (4) Did the denial of appellant's motion to conduct discovery following remand constitute reversible error? We turn now to address these questions.

1. *The requirement of evidentiary hearings.*

Diversified contends the proceedings before the master violated its right to procedural due process and are therefore null and void. It claims the master was required to hold formal hearings, swear witnesses and make a record.[4] Conversely, the City contends that because the duty of the master was simply to perform an accounting from existing records, no formal pre-report evidentiary hearing was required.[5] We agree with the

---

[3]The thrust of Diversified's objections is that the master did not conduct formal evidentiary hearings.

[4]Diversified is without standing to assert the master's failure to· make a record since there is no indication that appellant either timely requested the master to conduct formal hearings, requested a record or advanced the costs therefor. Phillips v. Adams, 85 Nev. 675, 678, 462 P.2d 35 (1969); NRCP 53(c); 5A Moore's Federal Practice, § 53.10.

[5]NRCP 53(c) gives the master power to control the mode of proof in matters of account. 5A Moore's Federal practice, § 53.06. See also 76 C.J.S., References § 83 (1952). NRCP 53(d)(3) provides,

When matters of accounting are in issue before the master, *he may prescribe the form in which the accounts shall be submitted* and in any proper case may require or receive in evidence a statement by a certified public accountant who is called as a witness. Upon objection of a party to any of

City. Appellant was not denied its right to due process. On at least five occasions during the preparation of his report, the master met with counsel and other representatives of Diversified either alone or together with the City and its counsel to discuss the report and consider objections.[6] The subsequent evidentiary hearings before the district court demonstrated the master relied only on competent, admissible evidence.[7] Finally, Diversified failed to exercise its right under NRCP 53(d)(2) to subpoena witnesses before the master.

In support of its due process claim, appellant cites Baker v. Simmons Company, 325 F.2d 580 (1st Cir. 1963), a patent infringment case, wherein the district court referred plaintiff's claim for damages to a master "to hear the parties and their witnesses, and to report to the court his findings and conclusions of law thereon on the question of damages." *Id.* at 582. On appeal, the court held improper the master's *ex parte* enlistment of an accountant to furnish him with defendant's profit and loss statements, finding a reversible impropriety in the fact that appellant had no opportunity to cross-examine the accountant as to his qualifications, methodology or conclusion. *Id.* at 583. Here, however, the master performed his own accounting functions. He met with the parties during the course of his investigation and discussed the various drafts of his report with them. During the subsequent evidentiary hearings he testified and was cross-examined as to his methodology in preparing the report. He placed the burden of proving an expenditure as benefiting the assessed land on the City. If the City failed to supply supporting documentation to his satisfaction, the expenditure was disallowed, which disallowance resulted in an increased credit against Diversified's assessment. A schedule of allowed expenditures was appended to the final report and was the subject of adversary inquiry at the evidentiary hearings. In contrast to *Baker, supra,* the master's failure

the items thus submitted or upon a showing that the form of statement is insufficient, the master may require a different form of statement to be furnished, or the accounts or specific items thereof to be proved by oral examination of the accounting parties or upon written interrogatories or in such other manner as he directs. (Emphasis added.)

[6]NRCP 53(e)(5) provides that,

Before filing his report a master may submit a draft thereof to counsel for all parties for the purpose of receiving their suggestions.

[7]The master examined the records of the City, the County Treasurer's and Assessor's Offices and his report was based on information therein contained. The district court properly determined the relied on public records are admissible evidence. NRS 52.085.

to follow "ordinary judicial procedures" did not here constitute an insufferable prejudice to appellant.

In addition to his *ex parte* investigation, the master met with counsel, afforded both sides an opportunity to provide input, and discussed with counsel his tentative drafts. Appellant presented no evidence whatsoever to either the master or the district court. It neither subpoenaed witnesses to appear before the master, nor requested that formal evidentiary hearings be had. These failures militate against appellant's claim that the procedures below violated its right to due process. This is especially true in light of the master's continuous communications with the parties and the fact that the court itself examined the account and entertained all objections thereto. *Cf.* Foster v. Bank of America, 77 Nev. 365, 365 P.2d 313 (1961).

2. *The master's report.*

Diversified next contends the master failed to make all necessary credits against the assessments. Specifically, appellant argues the master should have credited amounts remaining in the reserve fund and funded interest account.[8]

Resolution of this issue rests on the construction we place on the prior opinion in this case. Appellant relies on the court's direction that,

> Before the City should be permitted to compel a sale of the land under the deed of trust, it first should be required to reduce the assessments levied against the improvement district in an amount equal to the *amount earmarked for improvements* by the August 8 agreement *plus accrued interest on that sum.* From that amount, there should be subtracted any money actually expended for improvements or for the direct benefit of the district. That sum would not include expenditures for such items as the salaries of guards [footnote omitted] hired to protect the site from vandalism or attorneys fees and litigation expenses incurred by reason of certain lawsuits pending against Diversified. (Emphasis added.) Diversified Capital v. City No. Las Vegas, *supra,* at 627, 555 P.2d at 1240.

[8]The parties' prior agreement concerning funding for improvements to Diversified's industrial park provided for a reserve fund of $500,000.00 to be retained by City for payment of principal on its obligations in the event of deficiencies in the collection of assessments. The fund was to be held for the life of the bonds and warrants issues, and returned only after all assessments had been paid. Likewise, the funded interest account was to be held by the City for the life of the issue for the payment of interest in the event of defaults in assessment payments.

Diversified contends the "amount earmarked for improvements" should include not only the amount of the project fund, but also the amount set aside for payments of interest and principal. The master considered, but rejected, that argument. The master concluded, and we agree, that "the amount earmarked for improvements" included only the amount of the project fund. Accordingly, the master's finding was correct and the district court properly accepted it. NRCP 53(e)(2).

Finally, the master's determination that the credit should be allocated among the various tracts within the assessment district was also correct. Assessments within the district were levied on the basis of property ownership. Appellant's contention that it is entitled to the entire credit to the exclusion of other property owners is without merit.

3. *The proffered pleadings.*

Diversified contends the district court erred in its conclusion that the remand with instructions precluded amended and supplemental pleadings.

The single purpose of our remand was for the district court to make certain calculations in regard to credits against assessments and for determination as to whether appellant was in default.

In these circumstances, Rule 15 provides the court may (1) permit a party to amend his pleading and that "leave shall be freely given when justice so requires" (NRCP 15(a)), and (2) permit a "supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." NRCP 15(d). While a reversal does establish the law of the case (LoBue v. State ex rel. Dep't Hwys., 92 Nev. 529, 544 P.2d 258 (1976), Lanigir v. Arden, 85 Nev. 79, 450 P.2d 148 (1969)), a remand with instructions does not *per se* forbid supplemental pleadings if the trial court, in the exercise of its sound discretion, deems them appropriate. Crane Paper Stock Co. v. Chicago & N.W. Ry. Co., 344 N.E.2d 461 (Ill. 1976). We have consistently sustained the action of our trial courts in allowing or refusing amended or supplemental pleadings. Madsen v. Riverside M & L, 71 Nev. 356, 291 P.2d 1056 (1955); Gottwals v. Rencher, 60 Nev. 35, 92 P.2d 1000 (1939); Finnegan v. Ulmer, 31 Nev. 523, 104 P. 17 (1909); McCausland v. Ralston, 12 Nev. 195 (1877).

While appellant's original complaint sought only injunctive relief, the proffered pleadings added claims for damages and recission arising out of alleged conspiracies, interferences with

contractual and prospective advantages and breach of contract. Appellant concedes that not all of the proposed causes of action arose from transactions or occurrences which occurred subsequent to the original complaint. These claims might properly have been precluded. See Foman v. Davis, 371 U.S. 178 (1962). Clearly, should appellant wish to proceed against respondent incident to the claims, it may do so in an independent action. We are not here, however, expressing a view respecting the efficacy of these claims.

The denial of appellant's motion was not prejudicial. See Dressler v. Johnston, 21 P.2d 969 (Cal.App. 1933); cf. Crane Paper Stock Co. v. Chicago & N.W. Ry. Co., *supra*.

4. *The discovery prohibition.*

Diversified next alleges error in the trial court's denial of its motion for leave to conduct discovery.

Following remand, the district court denied appellant's motion for discovery, concluding that allowance would exceed the scope of the remand. Our trial courts are afforded reasonable discretion in controlling the conduct of discovery and its decisions are reversed only where a clear abuse appears. Jones v. Bank of Nevada, 91 Nev. 368, 535 P.2d 1279 (1975). Here, appellant never attempted discovery under NRCP 26-36. As we have already noted, appellant further failed to exercise its subpoena power in proceedings before the master; indeed, it failed to demand formal pre-report proceedings. See NRCP 53(d)(2).

Respondent argues appellant's generalized motion was simply a dilatory tactic, the denial of which appellant failed to preserve for appeal. See *Jones, supra.* Appellant has made no showing that the vaguely sought after evidence was any less accessible to appellant than it was to respondent or that the prospective products of any anticipated discovery would have materially changed the ultimate result. See 8 Wright & Miller, Federal Practice and Procedure, § 2008.

In conclusion, Rule 53 provides that in non-jury actions, the district "court shall accept the master's findings of fact unless clearly erroneous." NRCP 53(e)(2). See also Locklin v. Day-Glo Color Corporation, 429 F.2d 873 (2d Cir. 1970); Phillips v. Adams, 85 Nev. 675, 462 P.2d 35 (1969); Sauget v. Johnston, 315 F.2d 816 (9th Cir. 1963). On appeal, the question is whether the master's findings are clearly erroneous as a matter of law. Krinsley v. United Artists Corp., 225 F.2d 579 (7th Cir. 1955). NRCP 53(e)(2). The order of reference directed the master to report only upon particular issues. See Foster v. Bank of

America, 77 Nev. 365, 365 P.2d 313 (1961). This he did with commendable skill and candor. Cf. Oswald v. Dawn, 354 P.2d 505 (Colo. 1960). The master's findings of fact were not erroneous.

We affirm.

MOWBRAY, C. J., and THOMPSON, GUNDERSON, and BATJER, JJ., concur.