John CALL and Clark Jenkins,
Plaintiffs and Appellants,

v.

CITY OF WEST JORDAN, Utah,
Defendant and Respondent.

No. 19186.

Supreme Court of Utah.

July 23, 1986.

Rehearing Denied Oct. 29, 1986.

Robert J. Debry, Salt Lake City, for plaintiffs and appellants.

Stephen G. Homer, West Jordan City Atty., West Jordan, for defendant and respondent.

HOWE, Justice:

Plaintiffs, John Call and Clark Jenkins, appeal from the trial court's dismissal of their complaint and the entry of judgment in favor of defendant, City of West Jordan.

In 1974, West Jordan formulated a plan to expand its flood control and public park systems to meet the increasing needs of the growing city. As part of its plan, West Jordan decided to impose an impact fee as a condition to granting plat approval to subdivision developers. The fee was seven percent of the land in the subdivision or, at the option of the city, the equivalent value in cash. West Jordan, Utah, Ordinance 33, § 9–C–8(2) (1975). Plaintiffs paid the fees under protest and later brought this action attacking the ordinance.

We have issued two previous opinions in this case. In our first opinion, *Call v. City of West Jordan*, 606 P.2d 217 (Utah 1979) (*Call I*), we held that U.C.A., 1953, §§ 10–9–1 to –30 empowered West Jordan to exact an impact fee to provide for flood control and parks as a condition to granting plat approval. On rehearing, in *Call v. City of West Jordan*, Utah, 614 P.2d 1257 (1980) (*Call II*), we upheld the facial constitutionality of the ordinance, but we remanded to give plaintiffs an "opportunity to present evidence to show that the dedication required of them had no reasonable relationship to the needs for flood control or parks and recreation facilities created by their subdivision, if any." *Id.* at 1259.

■ On remand, the trial court allowed plaintiffs to amend their complaint to include a claim that the ordinance was invalid because West Jordan had not followed statutory requirements in enacting it. Although West Jordan does not cross-appeal the allowance of the amendment, it urges this Court to limit the case to the constitutional "reasonableness" issue. However, the pleadings may be amended after remand within the sound discretion of the trial court so long as they do not cover issues specifically foreclosed by the appellate court. *Street v. Fourth Judicial District Court, Utah County*, 113 Utah 60, 191 P.2d 153 (1948), Utah R.Civ.P. 15; *see White v. Lobdell*, 196 Mont. 156, 638 P.2d 1057 (1982); *Diversified Capitol Corp. v. City of North Las Vegas*, 95 Nev. 15, 590 P.2d 146 (1979). The trial court allowed West Jordan to argue why the pleadings should not be amended; but after consideration, allowed the amendment. Neither *Call I* nor *Call II* specifically addressed this issue, and we find no abuse of discretion in the trial court's allowing the amendment. Therefore, the issue of whether West Jordan had followed statutory requirements in enacting the ordinance was properly before the trial court.

Because of problems encountered by the plaintiffs in its discovery of information in the possession of West Jordan and because of our decision in *Banberry Development Corp. v. South Jordan City*, 631 P.2d 899 (Utah 1981), the trial court issued a pretrial order which placed on West Jordan the burden of producing evidence on several issues. These issues may be condensed into two main issues: (1) the reasonableness of the impact fee as applied to plaintiffs, and (2) whether the ordinance had been adopted according to statutory requirements.

It is necessary in this opinion to treat only the second issue. West Jordan was required at the threshold to present prima facie evidence that the city had followed the statutory requirements contained in U.C.A., 1953, §§ 10–9–1 to –30 in enacting the ordinance. Within section 25, the legislature has set forth specific procedures that a municipality must follow to exercise the powers granted to it:

> In exercising the powers granted to it by the act, the planning commission shall prepare regulations governing the subdivision of land within the municipality. A public hearing thereon shall be held by the legislative body, after which the legislative body may adopt said regulations for the municipality.

The trial judge held in his conclusions of law that the ordinance was validly promulgated and that "[i]t was not shown by a preponderance of the evidence that the city failed to comply with the provisions of section 10–9–25, Utah Code Annotated, in the promulgation of the ordinance." This conclusion was supported by the court's finding of fact No. 22:

> Prior to the adoption of the Ordinance, the governing body of the City conducted a public hearing in which an overall master plan for the development of the city was discussed. This hearing (held in August 1974) was conducted in the West Jordan school auditorium so as to accommodate the large number of citizens in attendance. The specific concept of flood control and having an impact fee paid by new developers was discussed at that public hearing. The Ordinance was prepared by the West Jordan Planning and Zoning Commission, even though the

City Attorney was responsible for the selection of the actual language used in the text of the Ordinance. The plaintiffs submitted no evidence to show that a public hearing was not held or that the Planning and Zoning Commission did not prepare the Ordinance.

We need not rule on the accuracy of this finding to resolve the issues presented in this case. Nevertheless, we are free to substitute our judgment for that of the trial court on the issue of law as to whether these facts satisfy the requirements of section 10–9–25. *Olwell v. Clark,* 658 P.2d 585 (Utah 1982), *Automotive Manufacturers Warehouse, Inc. v. Service Auto Parts, Inc.,* 596 P.2d 1033 (Utah 1979). As mentioned above, the pretrial order placed upon West Jordan the burden of making a prima facie showing that it had satisfied the requirements of section 10–9–25. We hold as a matter of law that it failed to carry this burden.

Some months prior to the August 1974 public hearing, the West Jordan Planning and Zoning Commission had discussed on numerous occasions the idea of requiring developers to dedicate a portion of their subdivision or to pay an equivalent value in cash for parks and flood control. In fact, on March 20, 1974, the Commission adopted a motion to have the city require five percent from subdividers to use for parks. A month later, after the Commission had exacted the five percent fee from at least one subdivider, the city planner told the Commission that the city had no legal basis to impose the fee. During this time, a special committee was preparing the West Jordan Master Plan. The master plan speaks only in general terms about the need for parks and recreational facilities. It also addresses in vague terms who should pay for capital improvements to the city, hinting that incoming residents should pay more than existing residents because "equity in community improvements are [sic] seldom fairly shared through taxation." Nothing in the master plan proposes that developers either dedicate seven percent of their subdivisions or the cash equivalent as a condition to receiving approval for their plats.

West Jordan asserts, however, that the "specific concept of flood control and having an impact fee paid by new developers was discussed" at the public hearing on the master plan. The minutes of the public hearing were not introduced as an exhibit, nor are they included in the record. However, one of the witnesses for West Jordan testified as to what was in the minutes:

[Mr. Moosman:] [T]he minutes reflect that Mrs. Schmidt asked [the city planner] concerning what was going on with the flood control problems. And perhaps I could read that. It would be quicker.

. . . .

[The Court] . . . Go ahead and read the pertinent parts. What does Mrs. Schmidt say?

A. [The witness:] She asked [the city planner] to tell what the County Flood Control had in mind for developers in the—

Q. Yeah. Go ahead.

A. [The city planner] then explained that each developer must take care of his own flood water that originates on his property. They have suggested catch basins that can be used both for flood control and recreational use. . . .

It is to be observed that an impact fee was not mentioned. In January 1975, four months after the master plan public hearing, the city council enacted the ordinance which imposed the seven percent impact fee. No evidence of any other public hearing remotely related to the ordinance appears in the record.

One's imagination must be stretched beyond rational limits to accept the master plan public hearing as satisfying the public hearing requirement of section 10–9–25. The ordinance was not even drafted until months after the master plan public hearing. Section 10–9–25 is very clear in this respect. The Commission must first prepare the regulations, one of which would provide for the impact fee. Then a public hearing thereon shall be held by the legislative body, after which the

legislative body may adopt said regulations for the municipality. In requiring a public hearing, our legislature contemplated that interested parties would have an opportunity to give their views, pro and con, regarding a specific legislative proposal, and thereby aid the municipal government in making its land use decisions. *See generally* 1 R. Anderson, *American Law of Zoning* § 4.11 (2d ed. 1976); 8A E. McQuillin, *The Law of Municipal Corporations* § 25.251 (rev. 3d ed., 1976).

West Jordan also argues that because the ordinance was adopted at a regularly scheduled city council meeting which was open to the public, the public hearing requirement was satisfied. Although the statute does not specifically address the required notice, we hold that because the statute calls for a *public hearing* our legislature contemplated something more than a regular city council meeting held, so far as the record here discloses, without specific advance notice to the public that the proposed ordinance would be considered. *See* 1 R. Anderson, *American Law of Zoning* § 4.11 (2d ed. 1976). Notice, to be effective, must alert the public to the nature and scope of the ordinance that is finally adopted. *Id.* at 200. Failure to strictly follow the statutory requirements in enacting the ordinance renders it invalid. *Melville v. Salt Lake County,* 536 P.2d 133 (Utah 1975); *Anderson* at 199. This well established rule is followed by the great majority of jurisdictions. Annot., 96 A.L. R.2d 449 (1964); *see Town of Beverly Shores Plan Commission v. Enright,* 463 N.E.2d 246 (Ind.1984) (statute required municipality to publish two notices in newspaper within ten days of hearing—ordinance invalidated where first notice appeared in newspaper eleven days before hearing); *Kalakowski v. Clarendon,* 139 Vt. 519, 431 A.2d 478 (1981); *Morland Development Co. v. Tulsa,* 596 P.2d 1255 (Okla.1979) (city ordinance establishing flood control districts invalidated because of failure to follow statutory requirements). We therefore hold that the West Jordan, Utah, Ordinance 33, § 9–C–8(2) (1975), is invalid and void ab initio.

One further matter must be addressed. Plaintiffs urge that we reverse the trial judge's findings denying class action status to this lawsuit. We will reverse a trial court's decision on class action status only when it is shown that the trial court misapplied the law or abused its discretion. *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791 (10th Cir.1970); 3B J. Moore & J. Kennedy, *Moore's Federal Practice* § 23.97 (2d ed. 1985); 2 H. Newberg, *Newberg on Class Actions* § 7.39 (2d ed. 1985). In the history of this lawsuit, plaintiffs requested class action certification on three different occasions from three different trial judges. All three denied their requests. Plaintiffs do not assert that the trial court misapplied the law in denying class action status. Thus, we shall review the trial court's decision to determine whether it abused its discretion.

■ The trial court found that the "putative class is not so numerous that joinder of all parties is impracticable." Plaintiffs assert that the size of the class alone mandates that joinder is impracticable. However, size of the class is not solely determinative of impracticability. We acknowledge that there may be instances where sheer size alone would determine impracticability. One of the salutary effects of Rule 23, Utah R.Civ.P., is that it allows access to the courts for numerous claimants to request redress of claims that are too small to merit the expenses of litigation on an individual basis. 1 H. Newberg, *Newberg on Class Actions* § 3.03 n. 38, § 3.06 at 145 (2d ed. 1985). In other instances, the size and membership of the class may be unknown, which makes joinder impracticable. However, we are here dealing with a class whose members have been identified. They are developers engaged in business whose claims are not so insubstantial that joinder or individual suits would not merit the cost. It is unlikely that denial of class action status would preclude them from pursuing their remedies. *See* 1 *Newberg* at 145. Judicial economy would be little served because the amount of the claim of each class member

would still need to be determined on an individual basis, regardless of class action status. Because of our ruling on the merits of the case, there is no possibility of inconsistent judgments and no issue of substantial public interest remains. Given the facts of this case, we cannot hold that the trial court abused its discretion in denying class action status.

We remand this case to the trial court to enter judgment consistent with this opinion. Costs to plaintiffs.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., dissents.