OPINION[1]

Per Curiam:

This is an appeal from an adoption decree.[2] The birth mother relinquished her parental rights to her child to New Hope Child and Family Agency (New Hope) for the purpose of adoption. New Hope and the birth mother ultimately selected the adoptive parents. The adoptive parents filed a petition for adoption with the district court. While the petition was pending, the birth mother filed an objection to the adoption, alleging that, due to a series of traumatic events that occurred around the child’s birth, she was incapable of giving knowing, voluntary, and intelligent consent to the relinquishment of her child.
Upon the birth mother’s objection, the district court held a hearing to determine the validity of her prior consent. During the three-day hearing, the birth mother filed supplemental objections, additional discovery requests, and a motion to revoke the relinquishment of her child because the relinquishment form did not state the names of the adoptive parents. The district court denied all requests and motions. At the conclusion of the hearing, the district court determined that the birth mother’s consent was valid and, shortly thereafter, granted the adoptive parents’ petition for adoption.
*965 The birth mother then filed this appeal challenging the district court’s: (1) failure to consider her supplemental objections, (2) failure to grant her discovery requests, (3) denial of her motion to revoke the relinquishment of the child for'adoption, and (4) determination that her consent was valid. We conclude that the birth mother’s assertions lack merit and affirm the order of the district court.

FACTS

When the birth mother gave birth to the child, she contacted New Hope, met with an agent to discuss the possibility of adoption, and decided to pursue adoption. Upon the birth mother’s request to be involved in the adoption, New Hope and the birth mother worked together to select the adoptive parents. New Hope sent her profiles of three potential adoptive parents, from which she selected the respondent adoptive parents. She called the nurse at her pediatrician’s office and told the nurse she was placing the child up for adoption. The birth mother then asked the nurse to expedite the release of the child’s medical records because she wanted the adoption to move quickly. A week prior to the adoption, the birth mother signed a communication agreement, which provided for some contact between the birth mother and the adopted child after the adoption. Handwritten in the agreement were requests for a visit on or near the child’s first three birthdays, a phone call per month for the first three months, a phone call from the adoptive parents when they returned home after taking custody of the child, and a videotape of the child when the child started walking.
The birth mother met with the adoptive parents at her home and asked them to adopt her child. The following day, the adoptive parents returned to the birth mother’s home to pick up the child’s belongings. The birth mother presented the adoptive parents with numerous items, including a stack of photographs with handwritten notes indicating who she was in the photos, some of the birth mother’s own baby clothes, all of the child’s clothes, a hospital bracelet from when the child was bom, and a blanket with the child’s name on it.
That same day, the birth mother executed a consent to relinquish her parental rights and consent for adoption as to her child. In so doing, the birth mother expressly relinquished her child to New Hope for the purpose of adoption. The relinquishment/consent form did not specify who the adoptive parents would be, but rather, she relinquished the child to New Hope and gave it the authority to consent to the adoption of the child. The birth mother testified that New Hope instructed her to read the relinquishment *966 form and to ask questions. The birth mother did not ask any questions and signed the forms. The birth mother also signed a statement of understanding, which required her to initial next to several statements that individually explained the effect of the adoption. Statement 4, initialed by the birth mother, plainly states, ‘ Tf I relinquish my rights to my child, I will have no legal rights to my child. Once the relinquishments are signed they are binding legally and Are Not revocable.”
The notary present at the relinquishment testified that the birth mother said that “they were giving up the child because they thought a lot and thought it would be better for the child to not be with them.” In the presence of the notary and an additional witness, an agent for New Hope asked the birth mother whether she was forced or coerced into the relinquishment, and she responded no. The agent also asked her if she understood the relinquishment was irrevocable, and she responded yes.
After the birth mother signed the relinquishment documents, she physically relinquished the child to the adoptive parents in an adoption ceremony. The birth mother handed the child to the adoptive mother, who then passed the child to the birth father. The birth father, in turn, handed the child to the adoptive father. The adoptive parents also signed the communication agreement. The adoptive parents then took custody of the child.
Initially, the birth mother and the adoptive parents had a very amicable and cooperative relationship. On several occasions, the birth mother sent cards to the adoptive parents, expressing her gratitude for them and her approval of their parenting. She told them, “You make a beautiful family!” The birth mother also sent cards to New Hope, thanking the agency for handling the adoption and for sending her the adoptive parents’ profile.
Six months after the relinquishment, however, the birth mother became upset when the adoptive parents changed the child’s middle name and put the child in daycare, after allegedly promising her they would not do so. The birth mother sent a letter to New Hope indicating her desire to terminate the adoption because “[p]romises were made both in writing and verbally, promises which have been broken.’ ’ She sent a similar letter to the attorney representing the adoptive parents and New Hope in the adoption, claiming to revoke her consent to the adoption. She also called the adoptive parents at home and left a message telling them that she wanted her child back. The birth mother accused the adoptive father of touching the child inappropriately around the child’s genitals on the date of the relinquishment. Police determined this accusation was unfounded.
The adoptive parents filed a petition for the adoption of the child. While the petition was pending, the birth mother filed an *967 objection to the adoption, alleging that her consent was invalid. The district court held a hearing to consider her objection. At the hearing, the birth mother’s counselor testified that he believed she was incapable of giving voluntary consent at the time of the adoption. However, the counselor admitted that he was not her counselor at the time of adoption. Further, the respondents’ expert witness noted that the counselor should have interviewed individuals who interacted with the birth mother at the time of the adoption. The counselor admitted he had not, and that he used less information than he normally does in making a diagnosis.
After the start of the hearing, the birth mother filed two supplemental objections, alleging additional grounds upon which to invalidate the adoption. The district court declined to hear the birth mother’s additional objections. During the hearing, the birth mother also made several discovery requests. These requests were also denied by the district court. After three days of testimony, the district court concluded that the birth mother’s consent was valid and denied her objection to the adoption. Soon thereafter, the district court granted the adoptive parents’ petition for adoption.

DISCUSSION

The birth mother’s supplemental objections

The birth mother’s initial objection to the adoption challenged only the validity of her consent. After the hearing commenced, the birth mother filed supplemental objections. The birth mother claimed that the district court had improperly limited the scope of her cross-examination of one of the respondents’ witnesses. She argued the adoption was invalid because New Hope failed to comply with certain procedures a child-placing agency must follow in conducting an adoption, and it did not make all the inquiries necessary to determine if the child was of Indian descent per NRS 127.052. She also alleged the adoptive parents breached the communication agreement and that this was an additional reason to invalidate the adoption.
The supplemental objections that the birth mother presented were without merit and irrelevant in determining the validity of her consent to the relinquishment. The birth mother was allowed to fully examine every witness on all factual matters. Sufficient evidence was presented at the hearing, prior to the birth mother’s supplemental objections, to indicate that New Hope made all necessary inquiries into the child’s ancestry. Further, the proceedings had already begun, and the supplemental objections sought to enlarge the scope of the proceedings beyond the issue of consent.[3] *968 The district court was not required to consider the birth mother’s supplemental objections and did not abuse its discretion by declining to do so.[4]

The birth mother’s discovery requests

After the hearing had begun, the birth mother made several discovery requests. She served a subpoena, a subpoena duces tecum, and a notice to take the deposition of New Hope’s custodian of records. The birth mother requested that New Hope produce all records pertaining to the child, including documents showing that New Hope complied with proper procedure in conducting the adoption, that the relinquishment was lawful, and all documents concerning the adoptive parents. She also served interrogatories and a request for production of documents on the adoptive parents and New Hope. The birth mother then served another subpoena and subpoena duces tecum on New Hope, identical to the first one. The district court denied all requests.
During a hearing, as in a trial, the right to discovery is subject to the discretion of the district court.[5] Absent a clear abuse of discretion, we will not disturb a district court’s decision regarding discovery.[6] NRCP 26(i) instructs the district court, in exercising its discretion, to consider, among other things, ‘ ‘the diligence or lack of diligence of the party seeking the discovery or order and the reasons for not having completed the discovery or having had the motion heard earlier.’ ’
*969 The birth mother was granted all discovery requests that she made prior to the hearing. She was given the opportunity to depose the New Hope agent who conducted the relinquishment and adoption. She did not file the additional discovery requests until after the hearing commenced. Our review of the record does not reveal any justification for the birth mother’s delay in requesting discovery. Further, the discovery requests seek confidential documents, which only pertain to the adoption by the adoptive parents. This information is irrelevant as to whether the birth mother’s relinquishment was voluntary. The district court also properly determined that this adoption proceeding was not the appropriate vehicle for reviewing New Hope’s general compliance with the law. Thus, the district court did not err by denying the birth mother’s requests for documents. We, therefore, conclude that the district court did not abuse its discretion by denying the birth mother’s tardy discovery requests.

The relinquishment form

The birth mother argues that the relinquishment was defective because, she asserts, this was a specific adoption, such that the names of the adoptive parents should have been, but were not, included on the relinquishment form.[7] Contrary to the birth mother’s characterization of the adoption, this was an agency adoption, not a specific adoption, and the names of the adoptive parents were not, therefore, required to appear on the relinquishment for adoption form. Although this court has required that the names of the adoptive parents appear on the relinquishment form for a specific adoption,[8] a similar requirement does not exist for agency adoptions.
In this case, the adoption was clearly an agency adoption. The adoption statutes, as interpreted by this court, “contemplate two methods of placing a child for adoption.”[9] A specific adoption, governed by NRS 127.040, occurs where the natural parent directly selects the adopting parents.[10] An agency adoption, governed by NRS 127.050, occurs where the natural mother relinquishes the child to an agency “with the intent that *970 the agency act in place of the parents in selecting the adopting parents.”[11]
Here, the Consent to Relinquish Parental Rights and Consent for Adoption form signed by the birth mother stated that the birth mother was relinquishing her parental rights to New Hope “for the purpose of adoption.” The consent form also gave New Hope express permission to consent to the adoption of her child. Although the birth mother was involved in selecting the adoptive parents, her involvement was limited, and it was New Hope, not the birth mother, which sought and interviewed potential candidates. The birth mother’s involvement did not transform the agency adoption into a specific adoption. Because this was an agency adoption, the district court did not err by denying the birth mother’s motion to revoke her relinquishment on the basis of the form used.[12]

The validity of the birth mother’s consent to relinquish her child for adoption

The birth mother claims she was incapable of giving knowing, voluntary, and intelligent consent to the relinquishment of her child. The birth mother presented testimony and evidence at the hearing to indicate that she experienced a number of traumatic events surrounding her child’s birth and preceding her decision to relinquish her parental rights for the purpose of adoption. However, conflicting evidence was presented regarding whether or not these events rendered the birth mother incapable of consenting to relinquishment of her child for adoption. Where conflicting evidence is presented, we review the district court’s order to determine if its findings are supported by substantial evidence.[13] We conclude that there was substantial evidence in the record to support the district court’s determination that the birth mother’s consent was valid.
*971 The birth mother’s counselor testified that at the time of the relinquishment, the birth mother was not capable of giving voluntary and intelligent consent to the adoption. The counselor’s “diagnosis” was called into question by the respondents’ expert witness. The respondents’ expert witness testified that, in general, it is difficult to make retroactive judgments and in order to effectively do so, the counselor should have interviewed individuals in contact with the birth mother at the time of the adoption. The counselor testified that he had not done so. Instead, the counselor relied only on the birth mother’s statements and her history, which, he himself acknowledged, was less than the full information he usually relied on in making diagnoses.
In addition to alleging that she was not psychologically capable of consenting to the adoption, the birth mother also alleges that the adoption agency misled her, that she did not understand the effect of the documents she signed, and that she did not understand the relinquishment was irrevocable. Aside from her own testimony, and some portions of her ex-husband’s testimony, the birth mother presented no other evidence at trial to support these contentions.[14] In fact, testimony was presented to suggest that the birth mother was fully aware and in control of her actions at the time of consent.
The birth mother contacted New Hope and sought information regarding adoption. She specified her desire to be involved in the adoption process, personally chose the adoptive parents, and asked them to adopt her child. She presented the adoptive parents with several personal items for the child. Per the birth mother’s request, she executed a consent to relinquish parental rights and consent for adoption. The documentation expressly stated the relinquishment was irrevocable. That same day, she physically relinquished the child to the adoptive parents. For several months after the relinquishment, the birth mother expressed her approval of the adoptive parents in cards written to them, as well as to New Hope. This admitted behavior supports the finding that the birth mother was aware of what was going on at the time of the adoption and understood the effect of her relinquishment. The birth mother was, according to her own testimony, an educated adult woman who has made many major decisions in her life, including the purchase of a home about six months before the child was born.
*972 Based on the foregoing, we affirm the district court’s adoption decree.

We originally decided this appeal in an unpublished order filed September 6, 2002. Respondents subsequently requested publication of the order. Cause appearing, we grant the request and publish this opinion in place of our prior unpublished order. Consistent with the confidentiality provisions set forth in NRS 127.140, we have altered the caption and used non-identifying references to the birth mother, adoptive parents, and adopted child.

The birth mother designates the district court order denying her motion to revoke the relinquishment of her parental rights as the order she is appealing. However, this order is interlocutory and not appealable. Yet, this court may constme the notice of appeal to be from the final judgment, if timely, and exercise jurisdiction over the appeal as long as the respondents have not been misled by the birth mother’s error. Forman v. Eagle Thrifty Drugs & Markets, 89 Nev. 533, 535-36, 516 P.2d 1234, 1235-36 (1973), overruled on other grounds by Garvin v. Dist. Ct., 118 Nev. 749, 59 P.3d 1180 (2002). There is no indication the respondents were misled in this case. Moreover, when an appeal is taken from a final judgment, an interlocutory order entered prior to the judgment may be reviewed by this court. Consolidated Generator v. Cummins Engine, 114 Nev. 1304, 1312, 971 P.2d 1251, 1256 (1998). The final order in this matter is the adoption decree. Accordingly, this court has jurisdiction to consider the interlocutory order denying the birth mother’s motion to revoke the relinquishment of her parental rights.

 Cf. Kantor v. Kantor, 116 Nev. 886, 891, 8 P.3d 825, 828 (2000) (hold *968 ing that where proper, such as where there is undue delay, a district court may deny leave to amend).

See NRCP 15(d) (stating that upon motion of a party, the court may permit a party to serve a supplemental pleading). Alternatively, if the birth mother were attempting to amend her original objection, she would have either needed leave of court or written consent of the adoptive parents. NRCP 15(a) (stating that once a party files a responsive pleading, a party may only amend his or her pleading by leave of court or by written consent of the adverse party).

See NRCP 26(i). The district court, relying on NRCP 81(a), which provides that the NRCP “do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute,” incorrectly found that the discovery provisions of the NRCP do not govern adoption proceedings. Although the adoption statutes severely limit the grounds upon which an adoption may be challenged and mandate the confidentiality of certain records and reports, the statutes do not place any general limits on discovery in the event that the adoption becomes subject to a normal judicial hearing. The adoption statutes are, therefore, not so inconsistent with the normal rules of discovery such that they should not apply to adoption proceedings.

Diversified Capital v. City N. Las Vegas, 95 Nev. 15, 23, 590 P.2d 146, 151 (1979).

See Las Vegas Sun v. Franklin, 74 Nev. 282, 290-91, 329 P.2d 867, 871 (1958) (holding that if the names of the adoptive parents are not disclosed to the biological mother and included on the relinquishment/consent form for a specific adoption, the adoption may not be valid).

 Id.

 Id. at 289, 329 P.2d at 871.

 Id. at 289-90, 329 P.2d at 871.

 Id. at 290, 329 P.2d at 871.

 The district court did not deny the motion on the merits, but rather treated the motion as one for summary judgment and concluded that because the facts were in dispute, the motion should be denied. Although the district court relied on the wrong reasoning to deny the motion, the result was correct and will, therefore, not be disturbed on appeal. See, e.g., Attorney General v. Board of Regents, 114 Nev. 388, 403, 956 P.2d 770, 780 (1998); Hotel Riviera, Inc. v. Torres, 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981).

 See Blanchard v. Nevada State Welfare Dep’t, 91 Nev. 749, 751, 542 P.2d 737, 738 (1975).

 The ex-husband testified that at the time of the relinquishment, the birth mother told him that she did not understand the forms she was signing.