DR. ALEXANDER COBLENTZ, AND JERRY FOX DBA THUNDERBIRD JEWEL SHOP, DR. ALEXANDER COBLENTZ, AKA ALEXANDER COBLENTZ, MEDICAL DOCTOR; JERRY FOX, APPELLANTS, v. AKIM RISKIN, RESPONDENT.

No. 4008

March 11, 1958                                     322 P.2d 905

*G. William Coulthard* and *John Peter Lee,* of Las Vegas, for Appellants.

*Jones, Wiener and Jones* and *D. Francis Horsey,* of Las Vegas, *Joseph H. Bernfeld,* of Los Angeles, for Respondent.

## OPINION

By the Court, MERRILL, J.:

This is an appeal taken by the defendants below from judgment for the value of merchandise delivered to them by the plaintiff upon consignment pursuant to the terms of a written agreement. Defendants deny that the merchandise in question was received by them or that they are parties to a consignment agreement. They assert that in the transactions here involved plaintiff was dealing with defendants' employee who was without authority to commit them to a consignment of merchandise.

The sole question upon this appeal is whether the record supports the determination of the trial court (sitting without jury) that the acts of the employee in receiving the merchandise and in executing the consignment agreement were on behalf of the defendants and were authorized by them. We have concluded that the record provides such support and that judgment should be affirmed.

Appellants are owners of the Thunderbird Jewel Shop in Clark County, Nevada. Respondent Riskin is a diamond broker and wholesale jeweler of Los Angeles, California. In August 1955 appellants employed Hyman Davidson for services in connection with their store. In January 1956 Davidson entered into a consignment agreement with Riskin pursuant to which he received, for purposes of retail sale, two expensive items of

jewelry. In his dealings with Riskin, Davidson represented himself as manager of the jewel shop with full authority to receive merchandise on consignment. Riskin did not check these representations with appellants but did check with others in the jewelry trade and satisfied himself as to Davidson's authority. The jewelry pieces were reconsigned by Davidson without Riskin's approval or consent. The person to whom they were reconsigned has disappeared. Riskin demanded of appellants the return of the jewelry or its agreed value pursuant to the terms of the agreement. Upon failure of appellants to comply with his demand this action was brought. Judgment in favor of Riskin was given in the sum of $16,300.

Appellants contend that there is no evidence from which the trial court could have found the essentials of either actual or apparent authority to exist. The legal basis for the court's judgment does not appear with clarity since two apparently conflicting conclusions of law have been stated: "1. That Hyman Davidson was the manager of the Thunderbird Jewel Shop and had authority to receive and accept on behalf of the defendants the merchandise alleged in paragraphs IX and XII of the Findings of Fact above. 2. That the defendants, and each of them, are estopped to assert any limitations upon the authority of Hyman Davidson to receive merchandise for and on behalf of the defendants Coblentz and Fox."

Whatever the significance of the second conclusion may have been to the trial court, the first is so positively stated and so specific as to the merchandise here involved that we feel compelled to the view that the trial court regarded the case as one of actual rather than apparent authority.

In support of its conclusion of authority the court found, "That during the month of August, 1955 the defendants * * * engaged and employed one Hyman Davidson * * * as manager of the Thunderbird Jewel Shop * * * that the said Hyman Davidson was and acted as manager of the said Thunderbird Jewel Shop at all times between August, 1955 and the

beginning of March, 1956 on behalf of, for the account of and for the benefit of the said defendants and each of them. That the said Hyman Davidson, during the period aforesaid, with the knowledge, consent and approval of the defendants, and each of them, held himself out to the jewelry trade and to persons dealing with the said Thunderbird Jewel Shop as the manager of the said Thunderbird Jewel Shop, with full authority to receive merchandise on behalf of the said Thunderbird Jewel Shop on memorandum and/or consignment."

Although in many respects the evidence is in dispute the record unquestionably provides support for this finding.

Riskin testified that it was the custom in the jewelry trade to take expensive pieces of jewelry on consignment rather than by purchase at wholesale. This testimony is compellingly supported by reason when the nature of consignment transactions and the benefit to retail merchants of this commercial practice are considered. By consignment retail merchants are not financially committed to the purchase of expensive items until they have themselves resold the items. Until resale their only financial commitment is that of safekeeping. Thus there is substantial benefit to be realized at the minimum of financial commitment. It can hardly be questioned that the engaging in consignment transactions would be regarded by those in the jewelry trade as a customary, proper and necessary function of store management.

Davidson testified positively that he had been employed as manager of the store with instructions to run the store as he saw fit; that he had discussed with appellants the matter of taking merchandise on consignment and that appellants had approved; that he had received merchandise on consignment from five firms other than Riskin; that in at least three of these cases appellants knew of the transactions and that they were consignments and had made no protest; that in some cases the pieces were returned unsold while in others they had been sold by the store; that when sold appellants had shared the profits of sale and had signed the

checks to the consignor for the agreed value; that most consignment pieces were placed on display at the store and were seen by appellants; that of the pieces here involved, at least one (an obviously expensive piece) had been seen on display by appellants; that another piece received from Riskin (an expensive emerald ring subsequently returned unsold) had been seen by appellants on display; that appellants had indicated approval of Davidson's success in securing such quality pieces and had never said anything about restrictions upon his authority to deal on consignment.

Actual authority includes both implied authority and incidental authority. Implied authority is that which the agent reasonably believes himself to possess as a result of representations by the principal or of acts of the agent permitted by the principal over a course of time in which the principal has acquiesced. Wyler Watch Agency v. Hooker (Mo.App., 1955), 280 S.W.2d 849; Weller v. Speet, 275 Mich. 655, 267 N.W. 758. Incidental authority is that which is reasonably necessary, proper and usual to carry into effect the main authority granted. McQuade v. Springfield Safe Deposit & Trust Co., 333 Mass. 229, 129 N.E.2d 923; McDonald v. Gough, 326 Mass. 93, 93 N.E.2d 260; Zazzaro v. Universal Motors, 124 Conn. 105, 197 A. 884; Beit Bros. v. Irving Tanner Co., 315 Mass. 561, 53 N.E.2d 702; See Mecham, Outlines of Agency (3d. ed.) 137, sec. 233.

The trial court has found that Davidson was employed to serve as manager and that he did so serve. The evidence we have recited presents a clear case of both implied authority and incidental authority. We conclude that the trial court's determination of actual authority is supported by the record and that appellants are bound by Davidson's actions in their behalf in committing them to the consignment agreement with Riskin.

Affirmed.

BADT, C. J., and EATHER, J., concur.