In the Matter of EJM, INC., d/b/a
Julian's, Bankrupt.

Gus L. WOOD, Trustee, Plaintiff,

v.

J. Chester MOBLEY, Defendant.

Bankruptcy No. B79–109N.

United States Bankruptcy Court,
N. D. Georgia,
Newnan Division.

Oct. 19, 1979.

Gus L. Wood, Sanders, Mottola, Haugen
& Goodson, Newnan, Ga., for plaintiff.

Johnny B. Mostiler, Griffin, Ga., for defendant.

## STATEMENT OF THE CASE

W. H. DRAKE, Jr., Bankruptcy Judge.

On August 28, 1979 the Trustee in the above-styled action filed a Complaint which alleged that the defendant's claim of lien is invalid for "failure to have obtained a security agreement from the bankrupt" (See plaintiff's Complaint, paragraph No. 5.) and which prayed for the Court to declare plaintiff's interest in the bankrupt's assets superior to the defendant's interest and to declare defendant's claim of lien to be invalid. On September 24, 1979 defendant filed his Answer and "prayed that the relief requested by the plaintiff be denied."

On October 10, 1979 plaintiff filed his Motion for Summary Judgment, Plaintiff's Brief in support thereof, Stipulation of Facts (Nos. 1–11) signed by attorneys for both the plaintiff and the defendant, and Exhibits A, B, C, and D. The import of plaintiff's argument is "that no security interest was conveyed by virtue of the fact that there was no writing entered into between the parties which might constitute a security agreement as required under the Georgia Uniform Commercial Code . . . and that a financing statement alone cannot serve as a security agreement." (See pages 2 and 3 of Plaintiff's Brief in support of Motion for Summary Judgment.)

On October 10, 1979 defendant also filed his Brief in opposition to the plaintiff's Motion for Summary Judgment and attached to his Brief Exhibits A, B, C, and D. These four Exhibits are copies of the same Exhibits submitted by the plaintiff and constitute copies of a $25,000 promissory note, dated January 7, 1978, payable to the order of J. Chester Mobley (the defendant), and signed by Julian Mobley for EJM, Inc. (the bankrupt); of the financing statement signed by both J. Chester Mobley and Julian D. Mobley, stating the address of both J. Chester Mobley and the address of EJM, Inc., and describing the collateral to be covered by the financing statement; of a $25,-000.00 check dated January 7, 1978, payable to the order of EJM, Inc., and signed by J.

Chester Mobley; and of a renewal promissory note in the amount of $25,000.00, dated January 1979 payable to the order of J. Chester Mobley, and signed by Julian Mobley for EJM, Inc. The import of defendant's Brief is that the financing statement and the promissory note, having been executed contemporaneously, adequately served as the alleged security agreement and therefore legally support the existence of defendant's claimed security interest.

## FINDINGS OF FACT

The Court hereby adopts the following "Stipulation of Facts", signed by attorney for the plaintiff and attorney for the defendant, and filed in this Court on October 10, 1979:

1.

The bankrupt filed his voluntary petition herein on April 2, 1979, and the first meeting of creditors was held April 25, 1979.

2.

At the time of filing bankruptcy herein, the bankrupt listed an indebtedness to the defendant herein in the sum of $25,000.00, and further alleged that the defendant was a secured creditor, with said indebtedness being secured by debtor's assets as listed on the financing statement attached hereto.

3.

Defendant was listed as a secured party on the financing statement attached hereto.

4.

No document entitled, "Security Agreement" was executed between the bankrupt and the defendant, and no documents have been executed in connection with this transaction other than an original loan note dated January 7, 1978, a copy of which is attached hereto as Exhibit A, the financing statement referred to in paragraph 2, *supra*, a copy of which is attached hereto as Exhibit B, a check signed by the defendant herein for $25,000.00 dated January 7, 1978, a copy of which is attached hereto as Exhibit C, and a renewal note dated January 7, 1979, a copy of which is attached hereto as Exhibit D.

5.

At all times during the negotiation of the loan in question, the parties understood and agreed that the bankrupt would "give a lien" on the assets of JULIAN'S to the defendant as a condition to receiving the loan in question. It was further understood, that if the "lien" were not given, no loan transaction would take place.

6.

In documenting the loan transaction, and the agreement of the parties, the parties utilized a certified public accountant, who ordered the documents substantiating the loan transaction.

7.

The certified public accountant ordered the promissory note and the financing statement contemporaneously from an attorney at law in Griffin, Georgia.

8.

The attorney at law drafted the promissory note and the financing statement and delivered them to the certified public accountant contemporaneously.

9.

The promissory note and the financing statement were executed contemporaneously by the bankrupt on January 7, 1978.

10.

The note executed January 7, 1978, was executed as a renewal of the original obligation which had not been paid.

11.

The bankrupt and the defendant intended the promissory note (Exhibit A)

and the financing statement (Exhibit B) to incorporate and to serve as evidence of their agreement, i. e., that the defendant herein would loan the bankrupt $25,-000.00 in exchange for the "giving of a lien" on all the assets of E J M, INC., d/b/a JULIAN'S.

## CONCLUSIONS OF LAW

Ga.Code § 109A–9–203(1) states:

Subject to the provisions of § 109A–4–208 on the security interest of a collecting bank and § 109A–9–113 on a security interest arising under the Article on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and it does not attach unless (a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown, a description of the land concerned; and (b) value has been given; and (c) the debtor has rights in the collateral.

In the instant case there is no dispute as to subsection (b) in that value has been given, nor subsection (c) in that the debtor has rights in the collateral. The sole dispute concerns subsection (a) and, more specifically, whether or not "the debtor has signed a security agreement which contains a description of the collateral . . ." Having examined a copy of the financing statement involved in this case, the Court finds that the debtor did sign said financing statement and that that statement contains an adequate description of the collateral. Therefore, the only issue to be resolved is whether or not the financing statement in conjunction with the note signed by the debtor in light of the surrounding circumstances constitutes a "security agreement" as envisioned by Ga.Code § 109A–9–203(1)(a).

In discussing the issue of whether or not a financing statement can adequately serve as a security agreement, Professor Ray D. Henson states on pages 25 and 26 of his treatise entitled *Secured Transactions Under the Uniform Commercial Code* :

If it is intended that a financing statement serve as a security agreement there would have to be an obligation to be secured, and this would ordinarily be evidenced by a note which will state the amount and terms of the loan, and the fact that the note is secured. . . .

The mere filing of a financing statement does not necessarily mean that a secured transaction has been entered into, but if there is a secured transaction in fact, then the security agreement may be the financing statement. The Code expressly states that a security agreement may be filed as a financing statement if it meets the statutory requirements and is signed by both parties under the 1962 Code or by the debtor alone under the revised version.

While Ga.Code § 109A–9–105(1)(*l*) defines "security agreement" as "an agreement which creates or provides for a security interest", the Court looks to relevant case law to more precisely define the term "security agreement." In the case of *In Re Modern Engineering & Tool Company, Inc., Connecticut Bank & Trust Company v. Kennedy*, 25 U.C.C.Rep. 580 (Conn.1978), the Court stated on page 585 the following:

The cases uniformly hold that a series of documents intended to reflect a security transaction, executed reasonably contemporaneously, none of which is sufficient standing alone, may collectively qualify as a security agreement. In *Komas v. Small Business Administration*, 22 U.C.C. Rep. 550 (Cal.Ct.App.1977), where there was no formal security agreement, the court held that the financing statement considered together with the loan application, promissory note, and other documents, established the agreement to create a security interest.

The Connecticut Court, having found that neither the financing statement nor the note could by itself qualify as a security agreement, went on to hold, on page 588 of its opinion, that:

It is abundantly clear that the language in the instrument leads to the logical conclusion that it was the intention of the parties that a security interest be created. It is concluded that the financing statement together with the note executed simultaneously constitute a valid security agreement. Collectively, they recite the entire transaction—the grant of a security interest and an identification of the collateral—the elements necessary to reflect the security agreement of the parties.

Similarly in the Georgia case of *First National Bank and Trust Company v. Olivetti Corporation of America*, 130 Ga.App. 896, 204 S.E.2d 781 (1974), the Judge held that:

> The financing statement before us discloses that it was signed by the debtor, and that it is a writing, which incorporates a security agreement and adequately describes the collateral. We are satisfied that the financing statement and the requisite security agreement are contained in one and the same document and is enforceable.

In two other cases (both affirmed by the Fifth Circuit Court of Appeals), in which the issue before the Court was whether or not the parties had entered into a security agreement, a financing statement together with a piece of correspondence was held to adequately meet the requirements for the creation of a security agreement. More specifically the documents, viewed collectively, portrayed a security agreement signed by the debtor and containing a description of the collateral. See *In the Matter of Carmichael Enterprises, Inc.*, 334 F.Supp. 94 (N.D.Ga., Judge Moye, 1971), affirmed at 460 F.2d 1405 (5th Cir. 1972); and *In Re Fiberglass Boat Corporation*, 324 F.Supp. 1054 (S.D.Fla.1971), affirmed at 448 F.2d 781 (5th Cir. 1971).

In reviewing the cases cited by the parties to this action, this Court has also examined the case of *Food Service Equipment Company, Inc. v. First National Bank of Atlanta*, 121 Ga.App. 421, 174 S.E.2d 216 (1970), and finds the same to be easily distinguishable from the facts of the instant case.

In making its ruling in this case, the Court notes that stipulated findings of fact No. 5 and No. 11 are highly significant and extremely relevant to the issue of whether or not the parties had intended to create a security agreement. Stipulated finding of fact No. 5 states:

> At all times during the negotiation of the loan in question, the parties understood and agreed that the bankrupt would "give a lien" on the assets of JULIAN'S to the defendant as a condition to receiving the loan in question. It was further understood, that if the "lien" were not given, no loan transaction would take place.

Furthermore stipulated finding of fact No. 11 states:

> The bankrupt and the defendant intended the promissory note (Exhibit A) and the financing statement (Exhibit B) to incorporate and to serve as evidence of their agreement, i. e., that the defendant herein would loan the bankrupt $25,000.00 in exchange for the "giving of a lien" on all the assets of E J M, INC., d/b/a JULIAN'S.

In adherence to the law as stated above, this Court rules that the promissory note signed by the debtor and the financing statement, signed by the debtor and adequately describing the collateral, viewed in light of the stipulated findings of fact Nos. 5 and 11, were intended by the parties to create a security agreement and, in fact, did create a security agreement as referred to in Ga.Code § 109A–9–203(1)(a). Therefore, this Court holds that a security interest in favor of the defendant did attach; and, inasmuch as there is no dispute concerning perfection of the same, defendant J. Chester Mobley's claim of a valid security interest in the estate of the bankrupt is sustained.

## ORDER OF COURT

This Court finds that there are no genuine issues of material fact to be tried and

that, in accordance with the foregoing opinion, defendant is entitled to a judgment as a matter of law. Wherefore, it is hereby ORDERED AND ADJUDGED that plaintiff's Motion for Summary Judgment filed on October 10, 1979 be denied, that plaintiff's Complaint be dismissed with prejudice, that judgment be entered in favor of the defendant, and that the costs of this action be taxed against the plaintiff.

IT IS SO ORDERED.