**In re GREAT BASIN TRANSPORT, INC., Debtor.**

**VALMONT EQUIPMENT CO., an Oklahoma corporation, Plaintiff,**

v.

**GREAT BASIN TRANSPORT, INC., Defendant.**

**Bankruptcy No. Bk–83–0169–A.
Adv. No. 83–0323.**

United States Bankruptcy Court,
W.D. Oklahoma.

Aug. 23, 1983.

James P. Fitzgerald of McGrath, North, O'Malley & Kratz, P.C., Omaha, Neb. and

**366**

Max C. Tuepker of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for Valmont Equipment Co.

B.J. Brockett of Brockett, Grace & Brady, Oklahoma City, Okl., for the Debtor, Great Basin Transport, Inc.

Kenneth L. Spears and James S. Matthews, Jr., Oklahoma City, Okl., for the trustee.

## DECISION

RICHARD L. BOHANON, Bankruptcy Judge.

This matter is before the Court on the complaint of Valmont Equipment Co., for relief from the automatic stay.[1] In response to the complaint the debtor, and subsequently the trustee upon the case being converted, has raised the issue of whether the plaintiff has a secured claim. The dispute rests upon the question of the capacity of an officer of Great Basin when he executed a security agreement. Since this Chapter 11 proceeding has been converted to a case under Chapter 7, the issues relating to the automatic stay and adequate protection are no longer apposite.

Both Valmont and Great Basin are Oklahoma based corporations. In August of 1982 they entered into sales contracts and Valmont sold Great Basin five squatagonal transport trailers, eight frac tanks, and one mud plant. Valmont manufactured or fabricated four of the squatagonal transports and delivered them to Great Basin and was paid in full. Valmont delivered the eight frac tanks to Great Basin but did not receive payment.

On August 30, 1982, J. Lynn Thornburgh, president of Great Basin,[2] and his wife, Ulrike Thornburgh, secretary-treasurer of Great Basin went to Valmont and executed a promissory note for $168,825.80. This amount represented the balance due on eight frac tanks, one squatagonal transport and the mud plant. This note was due 90 days after date and no payments have been made on it.

The promissory note was executed in the following manner:

/s/ J. Lynn Thornburgh
/s/ Ulrike Thornburgh
/s/ J. Lynn Thornburgh, Pres.
  Great Basin Transport, Inc.
/s/ J. Lynn Thornburgh, Pres.
  Thornburgh Oil and Gas Company

Simultaneously with the execution of the promissory note, J. Lynn Thornburgh and Ulrike Thornburgh signed a security agreement dated August 30, 1982, with Valmont as the secured party. As collateral for the promissory note the security agreement identifies the eight frac tanks, three squatagonal transports and the mud plant. In addition, however, included as collateral were a Mercedes and a Cadillac. Except for the Mercedes Great Basin owned the collateral described in the security agreement.

The security agreement defines as "debtor" Great Basin Transport, Inc. Thornburgh Oil & Gas Co., J. Lynn Thornburgh and Ulrike Thornburgh. This security agreement is executed by:

/s/ J. Lynn Thornburgh
/s/ Ulrike Thornburgh

Although the printed form security agreement had space for the corporate name and a signature block for the corporate officer no signature or corporate name appears in these spaces. In addition to the promissory note and security agreement, J. Lynn Thornburgh executed a financing statement covering the collateral. This financing statement shows Valmont as the secured party and Great Basin as the debtor. This document is signed by J. Lynn Thornburgh Pres., for the debtor. No issue has been raised as to the perfection of the security interest according to Oklahoma law. Other pertinent facts will become evident throughout the course of this opinion.

---

1. This matter was filed prior to the new Bankruptcy Rules taking effect on August 1, 1983, which provides that request to lift the stay would be contested matters raised by motion.

2. J. Lynn Thornburgh is also president of Thornburgh Oil and Gas Company.

Oklahoma's version of the Uniform Commercial Code dealing with attachment and enforceability of security interests provides, *inter alia*, that a security interest is not enforceable unless (1) the debtor has signed the security agreement which describes the collateral; (2) value has been given and (3) the debtor has rights in the collateral. 12A O.S.1981 § 9–203. It is the first provision which is at issue in this litigation. In this connection the Oklahoma UCC law defines "signed" to include any symbol executed or adopted by a party with present intention to authenticate a writing. 12A O.S.1981 § 1–201(39). Upon consideration of these statutory provisions, the question becomes whether Great Basin has signed the security agreement as "debtor" for purposes of enforceability.

It is the contention of the trustee and Great Basin that the security agreement is unenforceable since the agreement was not signed by either Mr. or Mrs. Thornburgh with designation of their corporate capacity. Therefore, they argue no security interest attached as to the trustee and Valmont's claim is unsecured pursuant to 11 U.S.C. § 544(b) and may be avoided. On the other hand Valmont asserts that the evidence shows the security agreement was executed in both individual and corporate capacities and, therefore, Valmont's security interest is enforceable. Valmont also raises tangentially matters of estoppel with regard to certain benefits received by Great Basin, but there is no need to reach this issue.

The evidence shows that at least three separate documents were executed with respect to this transaction. The promissory note evidencing the $168,825.80 obligation clearly establishes Great Basin as debtor. Likewise the financing statement sets out the collateral and identifies Great Basin as the debtor with Mr. Thornburgh signing on behalf of Great Basin. The security agreement executed at the same time as the promissory note identifies as "debtor" Great Basin along with J. Lynn and Ulrike Thornburgh, the parties who actually signed the agreement.

■ The trustee and Great Basin urge that since it was not made explicit on the Agreement that the Thornburghs were signing as representatives of the corporation it can only be inferred that they signed as individuals. However, failure of a corporate officer to designate an official capacity when signing a security agreement is not always dispositive of whether the agreement was "signed" by the corporation. *See e.g. In re Mid-Atlantic Piping Products of Charlotte*, 24 B.R. 314 (Bkrtcy.W.D.N.C. 1982); *In re Reid Communications Inc.*, 21 U.C.C.Rep.Serv. (Callaghan) 1436 (Bkrtcy. W.D.Va.1977); *In re A & T Kwik-N-Handi, Inc.*, 12 U.C.C.Rep.Serv. (Callaghan) 765 (Bkrtcy.M.D.Ga.1973); *In re Bro Cliff, Inc.*, 8 U.C.C.Rep.Serv. (Callaghan) 1144 (Bkrtcy. W.D.Mich.1971).

In this same connection many courts which have considered and interpreted the UCC provisions under § 9–203 (12A O.S. 1981 § 9–203) have found it useful to consider *in toto* a group of documents to such a transaction. *See Matter of EJM, Inc.*, 1 B.R. 119 (Bkrtcy.N.D.Ga.1979); *In re Modern Engineering & Tool Co., Inc.*, 25 U.C.C. Rep.Serv. (Callaghan) 580 (Bkrtcy.Conn. 1978); *In re Truckers International, Inc.*, 17 U.C.C.Rep.Serv. (Callaghan) 1337 (Bkrtcy. W.D.Wash.1975). In looking at this transaction *in toto* we think that there is sufficient cause to look beyond the face of the security agreement to determine the capacity in which the Thornburghs signed the document.

■ There is no doubt that an ambiguity arises from the fact that the security agreement defines as "debtor" the Thornburghs along with Great Basin and Thornburgh Oil & Gas Company, but upon the signature line for "debtor" Mr. and Mrs. Thornburgh appear to only sign as individuals. The ambiguity is even more distinct when reference is made to the associated promissory note and financing statement. These documents clearly indicate Great Basin as the debtor with regard to the obligation and collateral. In resolving this ambiguity the Court is justified in resorting to extrinsic evidence in determining what capacity the

**368**

Thornburghs signed the agreement. *In re Mid-Atlantic Piping Products of Charlotte, supra.*

 We think that the evidence is overwhelming that J. Lynn Thornburgh and Ulrike Thornburgh intended to bind Great Basin as the corporate debtor when they signed the security agreement. First of all it is inconsistent that all other relevant documents evidence an obligation on the part of Great Basin, but that the security agreement after defining Great Basin as a debtor would except it from the obligation. This would be neither logical nor commercially reasonable. Secondly, there is no evidence that the Thornburghs individually owned the collateral other than the Mercedes and the record establishes that each of the sales contracts recite Great Basin as the customer and not the Thornburghs. Finally there is little, if any, persuasive evidence which tends to show that the signatures were made with the intent to bind any entity other than Great Basin as the corporate debtor. All of these points give reason to question the signature of the Thornburghs only as individuals.

Based upon the foregoing we are compelled to hold that when Mr. and Mrs. Thornburgh signed the security agreement the same was "signed" by the debtor, Great Basin Transport, Inc., sufficient to comply with 12A O.S.1981 § 9–203. Therefore, Valmont's security interest is enforceable as against the trustee. Without elaboration, we feel that cases cited by the trustee and debtor, contrary to our holding here are distinguishable on their facts. *See e.g., In re Rex Printing Company, Inc.,* 14 B.R. 403 (Bkrtcy.N.D.Ind.1981); *Little v. County of Orange,* 31 N.C.App. 495, 229 S.E.2d 823 (1976); *American Exchange Bank, Collinsville, Okl. v. Cessna,* 386 F.Supp. 494 (D.N. D.Okl.1974).

Accordingly, it is the held that Valmont Equipment Company has an enforceable security interest in the collateral which secured Great Basin's outstanding promissory note in the amount of $168,825.80.

Pursuant to B.R. 7052 this Decision constitutes the findings of fact and conclusions of law.

An appropriate judgment will be entered.