**In re A.C. BALLARD and Dorothy Ballard dba Ballard/Lawson Concrete Company, Debtor.**

**Bankruptcy No. BK–S–87–3222–LBR.**

United States Bankruptcy Court, D. Nevada.

May 12, 1989.

Gary L. Compton of Gross & Compton, Las Vegas, Nev., for trustee.

Gerald M. Gordon of Waldman, Gordon & Silver, Ltd., Las Vegas, Nev., for movant.

## MEMORANDUM DECISION AND ORDER

LINDA B. RIEGLE, Bankruptcy Judge.

At issue is the motion of Keystone Acceptance Corporation (Keystone) for Relief from Automatic Stay and Release of Cash Collateral. In its motion, Keystone seeks to have the stay of 11 U.S.C. § 362 lifted to permit it to take possession of the receivables of the debtor and to have the trustee turn over to it approximately $20,000 received in settlement of a lawsuit with this party.

Keystone asserts that it has an effective security agreement by virtue of a factoring agreement signed by Jack Lawson on May 1, 1986, on behalf of an entity denominated as "(Jack) Lawson/Ballard Tilt–Ups Co." Keystone claims its security interest was properly perfected by the filing of a financing statement, attached hereto as Exhibit 1, with the Nevada Secretary of State.

The trustee opposed Keystone's motion on the grounds, *inter alia*, that Keystone did not have an interest in the receivables or funds as it did not have a security agreement with the debtor and, in any case, the interest was unperfected.[1] A creditor, Steel Engineers, (Steel), filed an opposition on the grounds that it claimed an interest in the $20,000; Steel also questioned the validity of Keystone's agreement with the debtor as a security agreement.[2]

## ISSUES

In order for Keystone to prevail as against the trustee, its interest must be valid as against a judicial lien creditor. 11 U.S.C. § 544(a). Such a determination must be made by reference to state law. 9 *Anderson on the Uniform Commercial Code*, § 9–402:4 (3rd ed. 1985). Under Nevada law, including the 1972 version of the Uniform Commercial Code, Keystone must demonstrate that it has a valid security agreement and that it has perfected its interest. N.R.S. 104.9301. Accordingly, the issues before the Court are: 1) whether the security agreement was signed by the debtor within the meaning of N.R.S. 104.-9203; and 2) whether the financing statement, filed under the debtor's trade name, is sufficient to perfect Keystone's interest under N.R.S. 104.9402.

## FACTS

Ballard operated, as a sole proprietorship, a company licensed by the Nevada Contractors Board as a concrete subcontractor. This company was operated under the name "A.C. Ballard Concrete Company" from September 1984 to November 1986, when the name of the business was changed to Ballard Lawson Concrete Company. Jack Lawson (Lawson) was an employee of Ballard's in what might be characterized as a managerial capacity. He was a salaried employee and received no share of the company's profits.[3] While Lawson and Ballard apparently discussed, on numerous occasions, the entering into of a partnership or buy-out of Mr. Ballard's business interests, the arrangements were never consummated.[4]

---

1. Keystone and the trustee directly addressed the issues of Keystone's status as a perfected lienholder in their respective points and authorities. While no complaint has yet been filed by the trustee under 11 U.S.C. 544 the trustee is well within the statute of limitations of 11 U.S.C. 546. Accordingly, this court will consider whether or not Keystone's interest is subject to being defeated by the trustee in deciding this motion. *See, e.g., In re Swati, Inc.,* 54 B.R. 498 (Bankr.N.D.Ill.1985).

2. Because of the disposition of this case it is not necessary to address the issues raised by Steel's claim to the funds vis-a-vis Keystone.

3. Lawson explained that his name was used because Ballard had "personality problems" getting along with clients and that Ballard wanted to impress upon people that Lawson was running the company.

4. One such agreement provided as follows:
AGREEMENT
TO WHOM IT MAY CONCERN:

Lawson testified that prior to entering into the factoring agreement with Keystone, he had consulted with and obtained the approval of Ballard. He further testified that he had intended to sign and did sign the factoring agreement on behalf of Ballard. While Roger Loff (Loff), the agent who signed the agreement for Keystone, and Lawson both testified that Ballard had given Lawson a power of attorney, no such document was produced at the hearing.

Loff testified that although the factoring agreement was executed under the name Lawson/Ballard Tilt–Up, and although he was presented with the agreement described in footnote 4 he understood that Lawson was representing Ballard and not a company owned by Lawson. However, in an affidavit submitted by the Court, Loff testified that Lawson informed him that "Lawson and Ballard were forming a partnership and that the name of the corporation was to be Lawson–Ballard Tilt–Ups, a general proprietorship."

During the duration of the agreement, which continued at least until the filing of the debtor's petition, Keystone advanced "hundreds of thousands of dollars" of funds which were all ultimately deposited into the company's account. All of the receivables factored were receivables of Ballards' company. As of May 1988, Keystone alleged it was owed $305,456. In his schedules the debtor admitted owing $200,000 and scheduled Keystone's claim as a secured claim arising from a security interest in accounts receivable. No evidence was introduced to controvert Loff's or Lawson's testimony.

AS OF FEBRUARY 25, 1986, I, AC BALLARD AM TURNING AC BALLARD CONCRETE COMPANY OVER TO JACK LAWSON. FOR THIS JACK LAWSON HAS AGREED TO ASSUME ALL ASSETS AND LIABILITIES.
ASSETS:
OFFICE FURNITURE
CONTRACTS
ACCOUNTS RECEIVABLE
LIABILITIES
ALL DEBTS
IF, JACK LAWSON KEEPS THIS COMPANY GOING FOR THREE YEARS FROM THIS DATE, WE WILL TALK ABOUT HIS BUYING A C BALLARD CONCRETE COMPANY, AND GETTING HIS OWN LICENSE.
/s/_____
AC BALLARD
/s/_____
DOROTHY BALLARD
/s/_____
JACK LAWSON

## DISCUSSION

### 1. *Sufficiency of Keystone's Security Agreement*

Section 104.9203 of the Nevada Revised Statutes provides in pertinent part:

1. Subject to the provisions of NRS 104.4208 ... and NRS 104.9113 ..., a security interest in not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) ... the debtor has signed a security agreement which contains a description of the collateral ...

The definition of "signed" is set forth in N.R.S. 104.1201(38), and provides that " 'signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing." N.R.S. 104.-1201(38).

In the present case the factoring agreement upon which Keystone relies listed an erroneous trade name as the debtor entity and was not signed by A.C. Ballard, but was instead signed by Jack Lawson.[5] However, these facts, by themselves, do not necessarily render the security agreement fatally defective. *See In re Bro Cliff, Inc.,* 8 U.C.C. Rep.Serv. 1144 (W.D. Mich.1971).

As one noted commentator explains:

... The cases suggest two significant sets of issues concerning who must sign. A number of cases involve challenges to signatures made by individuals with the ostensible purpose of binding a business entity. In this context, courts must distinguish between the functions of financing statements and security agreements. Section 9–402 requires that the financing

---

**5.** The factoring agreement contained no indication that Lawson was signing in a representative capacity.

statement include the name, as well as the signature of the debtor. The inclusion of the debtor's name on the financing statement generally prevents misfiling and establishes who the debtor is. *The security agreement signature requirement, on the other hand, is primarily a statute of frauds. Thus, when an authorized principal of the company has executed a security agreement, the absence of the true business name should not defeat the security interest as long as the evidence indicates that the signer did in fact intend to bind the entity by the signature.* Of course, the individual's signature will not always operate to bind the business entity. *The individual must have authority to encumber the business property.* Such issues will turn on agency, corporation, and partnership law applicable to secured transactions through 1–103.

J. White & R. Summers, *Uniform Commercial Code,* Vol. 2 at p. 316, (3rd ed. 1988). (Emphasis added).

The inquiry is therefore two-pronged. First, did Lawson have the requisite authority to enter into contracts on behalf of A.C. Ballard, and second, if such authority is established, did Lawson have the requisite intent to bind such entity when he signed the subject factoring agreement?

Clearly, the factoring agreement at issue gives rise to an ambiguity sufficient to justify this court's resort to extrinsic evidence to determine in what capacity Lawson signed the agreement. *See Schaefer v. Bidwell,* 9 Nev. 211 (1874); *Gillig, Mott & Co. v. The Lake Bigler Road Co.,* 2 Nev. 214 (1886); *Accord In re Great Basin Transport, Inc.,* 32 B.R. 365 (Bankr.W.D. Okla.1983).

In Nevada, a purported agent may testify as to his authorization "if he is under oath and subject to cross-examination." *Jos. Schlitz Brewing Co. v. Grimmon,* 28 Nev. 235, 81 P. 43 (1905). Furthermore, agency need not be proven directly, but may be shown instead by circumstances and course of dealing. *See Herring–Hall– Marvin Safe Co. v. Balliet,* 38 Nev. 164, 145 P. 941 (1915).

■ Keystone elicited testimony from Lawson sufficient to find that he was an authorized agent of A.C. Ballard. Additionally, the testimony of both Lawson and Loff tends to establish a course of dealing between Keystone and Ballard and a pattern of ratification sufficient to prove agency status, especially in view of the fact that no controverting testimony or other evidence was presented.

The law in Nevada supports such a conclusion. For example, in *Coblentz v. Riskin,* 74 Nev. 53, 322 P.2d 905 (1958), the Nevada Supreme Court has stated:

> Actual authority includes both implied authority and incidental authority. Implied authority is that which the agent reasonably believes himself to possess as a result of representations by the principal or of acts of the agent permitted by the principal over a course. of time in which the principal has acquiesced.

*Coblentz,* 74 Nev. at 57, 322 P.2d at 907. *Accord Gillig,* 2 Nev. at 224 wherein the Supreme Court stated:

> [F]or it is a familiar rule of the law of agency that where an agent is in the habit of doing certain acts on behalf of his principal, the agent is presumed to possess the authority to do such acts in similar transactions, and in the course of the same business, (absent proof of notice of revocation of power or of collusion between a 3rd party and the agent).

■ The second step in the analysis is to determine whether Lawson intended to bind A.C. Ballard dba A.C. Ballard Concrete Co. when he signed the factoring agreement.

While the authorities cited to this court by Keystone are persuasive with regard to the proposition that the absence of the debtors' name on the security agreement and/or the absence of any indication of representative capacity is not fatal to an effective security interest, *see Mid–Atlantic Piping Products of Charlotte, Inc.,* 24 B.R. 314 (Bankr.W.D.N.C.1982); *Accord In re Air Vermont, Inc.,* 45 B.R. 817 (D.Vt. 1984); *In re Great Basin Transport, Inc.,* 32 B.R. 365 (Bankr.W.D.Okla.1983); *In re*

*Bro Cliff, Inc.*, 8 U.C.C. Rep. Serv. 1144 (Bankr.W.D.Mi.1971), this court is seriously troubled by the fact that not only is the debtor's name not found anywhere on the factoring agreement, but more importantly, the agreement contains the name of a fictitious entity which never came into being. The court admits that it has a nagging suspicion that Lawson really intended to bind not A.C. Ballard, a sole proprietorship, but rather some partnership or entity in which Lawson was to become an owner.

Nonetheless, in light of the testimony of both Lawson and Loff, the fact that Keystone's financing statement listed the name of the debtor as A.C. Ballard Concrete Co.,[6] and that the debtor admits a secured debt owed to Keystone in its schedules and statements, and further mindful of the fact that the issue is rendered moot by the failure of Keystone to perfect its interest, this court will resolve the doubt in favor of Keystone.

### 2. Sufficiency of Keystone's Financing Statement

As indicated above, the trustee challenges the sufficiency of the financing statement filed by Keystone based upon the fact that such financing statement was filed under the debtor's former fictitious trade name, "A.C. Ballard Concrete Co." instead of under the debtor's individual name.

The relevant statute provides as follows:

1. A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

.    .    .    .    .

7. A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than 4 months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

8. A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

Nevada Revised Statutes 104.9402.

As explained by the drafters of the 1972 revisions to the Uniform Act:[7]

Subsection (7) undertakes to deal with some of the problems as to who is the debtor. *In the case of individuals, it contemplates filing only in the individual name, not in a trade name.* ... Trade names are deemed to be too uncertain and too likely not to be known to the secured party or person searching the record, to form the basis for a filing system.

Uniform Commercial Code 9–402, Point 7, Draftsmen's Comment to 1972 official text. (Emphasis added).

This court interprets subsection (7) of 104.9402 to require the use of the debtor's legal name in a financing statement. *See, e.g., In re Columbus Typewriter Company, Inc.*, 75 B.R. 834 (Bankr.N.D.Miss. 1987); *In re Covey*, 66 B.R. 459 (Bankr.N.

---

**6.** The subject documents may be considered together in making the present determination, *see Mid–Atlantic Piping*, 24 B.R. at 320.

**7.** Nevada courts have often looked to the comments in interpreting specific sections of the

Uniform Commercial Code. *See Lubritz v. Circus Circus Hotels*, 101 Nev. 109, 693 P.2d 1261 (1985); *Nevada State Bank v. Fischer*, 93 Nev. 317, 565 P.2d 332 (1977); *Jones v. Bank of Nevada*, 91 Nev. 368, 535 P.2d 1279 (1975).

D.N.H.1986); Morris, *The Fruits of Mischievous Seeds: Notice Filing Under Article 9 and the Continuing Problem of Trade Names,* 11 U. Dayton L.Rev. 243 (Winter 1986). However, if a trade name is similar to the legal name so as not to be "'seriously misleading'", the financing statement may be "saved" by application of N.R.S. 104.9402. *Pearson v. Salina Coffee House, Inc.,* 831 F.2d 1531, 1536 (10th Cir.1987). *Contra In re Glasco, Inc.,* 642 F.2d 793 (5th Cir.1981).

█ Since in the present case the financing statement was filed not under the debtors' legal name, but under a former fictitious trade name, the next inquiry is whether the use of such trade name was "seriously misleading."

The cases dealing with when the name on a financing statement is seriously misleading are many and the results reached divergent. *See, e.g., In re Platt,* 257 F.Supp. 478 (E.D.Pa.1966) (a listing under "Platt Fur Co." was not seriously misleading when name should have been "Henry Platt");[8] *In re McGovern Auto Specialty, Inc.,* 51 B.R. 511 (Bankr.E.D.Pa.1985) (discrepancy between debtor's true name "McGovern Auto Specialty, Inc." and erroneous name "McGovern Auto & Truck Parts, Inc." found to be seriously misleading).; *In re Tyler,* 23 B.R. 806 (Bankr.S.D.Fla.1982) (discrepancy between "Tri–State Moulded Plastics, Inc.", and "Tri–State Molded Plastics, Inc.", seriously misleading). *In Re Columbus Typewriter Company, Inc,* infra (filing under Columbus Business Machines seriously misleading as to entity with corporate name Columbus Typewriter Company).

No hard and fast rule exists for determining when such a discrepancy is "seriously misleading." Instead, the Ninth Circuit has "utilized a more flexible, ad hoc approach to determine, by an essentially factual inquiry, the extent to which an error in the financing statement would be misleading to one undertaking a reasonable search." *In re McCauley's Reprographics, Inc.,* 638 F.2d 117, 119 (9th Cir.1981). *Accord In re West Coast Food Sales, Inc.,* 637 F.2d 707 (9th Cir.1981). In such a case, "the dispositive question is usually whether a reasonable search under the debtor's true name would uncover the filing." *In re McCauley's,* 638 F.2d at 119.[9]

At first blush the two names at issue present a striking similarity, however, when viewed from the perspective of a hypothetical lien creditor who has only the indexing system at his disposal, the disparity between the names becomes clear. As the Court stated in *In re McGovern:*

The resolution of the question cannot be made simply by comparing two names, but must be settled with an eye toward the intended operation of the UCC indexing system in which the errors are manifest. A reasonable searcher properly using the index is looking for the name of the debtor amid a host of similar names. The system may contain hundreds or millions of names, depending on the size of the index. The extent to which a reasonable searcher may correctly identify an erroneous listing as that of the debtor is dependent, of course, on the size of the index. Analogizing the UCC index to a telephone book is apt. Searching under an erroneous name would be much more difficult with the Manhattan phone book than with an eight page phone book for some rural county.

*In re McGovern,* 51 B.R. at 514.

Accordingly, if on the date of filing the trustee searched the records under the

**8.** The authorities cited by Keystone in support of its claim that the trade name used on its financing statement was not fatally defective dealt with the 1962 version of the U.C.C. which has been substantially revised by the 1972 amendments to 9–402. Importantly the 1972 version added the language of subpart (7). Before this amendment much debate centered on whether the debtor's "true name" or trade name was sufficient within the meaning of subpart (1). As a result, many of the "seriously misleading" cases dealt not with errors in indexing or typographical errors, but with what names the debtor used in the community. *See, e.g., Siljeg v. National Bank of Commerce of Seattle,* 509 F.2d 1009 (9th Cir.1975).

**9.** It should be noted that *McCauley's* was decided under the 1962 version of the U.C.C. Hence this test should not be considered to erode the basic requirement that the debtor's own name be used. See *Pearson* supra.

names provided to him in the petition, the search would be conducted under the names A.C. Ballard and Dorothy Ballard dba Ballard/Lawson Concrete Co. The official form for requesting such a search, which is used in this jurisdiction, asks for the debtor's name "last name first." The names above would be searched under "B" for Mr. and Mrs. Ballard, and "B" for Ballard/Lawson Concrete Co.[10] Even if a creditor had the foresight to search under "A" for A.C. Ballard instead of Ballard, A.C., such searcher would have come up with a financing statement, signed by Jack Lawson as *owner*, which lists a different address and different tax I.D. than that of the debtor.

The importance of this index is described by an author as follows:

> ... Upon filing, the Code directs the clerk to mark the statement with a number and index it under the debtor's name. Thereafter, any interested third party can obtain information regarding security interests that may exist with respect to the collateral described in the filed financing statements. The searcher determines through the indexing system whether a particular debtor's name appears and then reviews any financing statement identified by number in the index as connected to that debtor. Thus, the article 9 public-notice system rises and falls on the integrity of the debtor-name index that the clerk must maintain. It is the index, after all, that file searchers use to determine whether any financing statements of interest have been put to record. Therefore, the information contained in the index, primarily the debtor's name, is arguably more important than the additional information included on the face of the financing statement itself. The reason for this, quite simply, is that if the index inaccurately describes the debtor, the file searcher may never find the related financing statement to review its contents. Thus, if the index does not lead the searcher to

the filed financing statement, no real public notice is effected.

Morris, *supra*, at 243.

This case is distinguishable from cases like *In re Platt*, 257 F.Supp. 478 (E.D.Pa. 1966), wherein the court held that the creditor's financing statement listing the debtor by its trade name Platt Fur Co. was "sufficiently related to the name of the debtor, Henry Platt, to require those who search the records to make further investigation ..." *But see In re Moore*, 21 B.R. 898 (Bankr.E.D.Tenn.1982) (trade name Moore's Welding & Mining Co. insufficient as true name, Charlie Moore); *Citizens Bank v. Ansley*, 467 F.Supp. 51 (M.D.Ga. 1979) aff'd, 604 F.2d 669 (5th Cir.1979) (trade name Ansley Farms insufficient as true name, Emory Ansley); *In re Wishart*, 10 U.C.C.Rep.Serv. 1296 (Bankr.W.D.Mich. 1972) (trade name Wishart Equipment Co. insufficient as true name, Horace Wishart). In a case such as *In re Platt*, a reasonable searcher would search under the name "Platt" and would, as a result, come up with "Platt Fur Company." As demonstrated above, however, such would not be the result in the case at bar, since a search under the name "*B*allard" would not discover a financing statement filed under "*A* " for "A.C. Ballard Concrete Co."

This court's conclusion is further supported by the fact that the evidence introduced by the trustee that inquiries directed to the Nevada Secretary of State's office on May 31, 1988 under the name "Ballard-Lawson Concrete Co; DBA A.C. Ballard," "Ballard, Dorothy," and "Ballard, A.C." failed to discover the financing statement filed under "A.C. Ballard Concrete Co.".

Finally, even if our intrepid searcher were so fortunate as to discover the filed financing statement, such discovery would only lead him to a security agreement which is itself seriously misleading. *See In re McCauley's*, 638 F.2d at 119, (Even if the searcher had inquired further, the search would have uncovered an underly-

---

**10.** While in our hypothesis the trustee would have the benefit of a listing of fdba's as reflected in the Statement of Affairs, the hypothetical lien creditor whose status the trustee assumes would not. Furthermore, the debtor ceased to conduct business under the trade name A.C. Ballard Concrete Co. in November of 1986.

ing security agreement which contained an error just as seriously misleading as the financing statement.)

If a search under the debtor's true name would not reveal the filing under the trade or fictitious name, then it is assumed that the searcher has not been given notice to inquire further to discover the correct identity of the debtor and the secured creditor has not met its burden of complying with the financing statement requirements. *In re Davadick*, 82 B.R. 391, 393 (Bankr.W.D. Pa.1988).

As stated by the court in *Davadick:*

The purpose of the notice of filing requirements under the Uniform Commercial Code is to allow a prospective creditor to discover the existence of prior security interests of the debtor. To hold that PNB has a perfected security interest in the face of its seriously misleading designation of the debtor on its financing statement would only serve to frustrate the underlying notice policy of the U.C.C. *Id.* at 394.

Keystone has the burden to prove that an ordinarily prudent person searching through the U.C.C. index would be reasonably likely to discover the financing statement filed under "A.C. Ballard Concrete Co." if he were searching for the true name of the debtor. *See In re McGovern*, 51 B.R. at 514. Keystone has clearly failed to carry this burden.

Accordingly, Keystone's request for relief from automatic stay is denied as it is a general unsecured creditor.

IT IS SO ORDERED.[11]

---

**11.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.

## EXHIBIT 1

**This FINANCING STATEMENT is presented for filing pursuant to the Nevada Uniform Commercial Code**

1. DEBTOR (LAST NAME FIRST)
A.C. BALLARD CONCRETE COMPANY

1A. SOCIAL SECURITY OR FEDERAL TAX NO.
88-0183829

1B. MAILING ADDRESS
4525 W. Hacienda #5

1C. CITY, STATE
Las Vegas, Nevada

1D. ZIP CODE
89118

1E. RESIDENCE ADDRESS (IF AN INDIVIDUAL AND DIFFERENT THAN 1B)

1F. CITY, STATE

1G. ZIP CODE

2. ADDITIONAL DEBTOR (IF ANY) (LAST NAME FIRST)
N/A

2A. SOCIAL SECURITY OR FEDERAL TAX NO.

2B. MAILING ADDRESS

2C. CITY, STATE

2D. ZIP CODE

2E. RESIDENCE ADDRESS (IF AN INDIVIDUAL AND DIFFERENT THAN 2B)

2F. CITY, STATE

2G. ZIP CODE

3. DEBTOR(S) TRADE NAME OR STYLE (IF ANY)
N/A

3A. FEDERAL TAX NO.

4. ADDRESS OF DEBTOR(S) CHIEF PLACE OF BUSINESS (IF ANY)

4A. CITY, STATE

4B. ZIP CODE

5. SECURED PARTY
NAME Keystone Acceptance Corporation
MAILING ADDRESS P.O. Box 80480
CITY Las Vegas    STATE Nevada    ZIP CODE 89180

5A. SOCIAL SECURITY NO. FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO.
88-0210025

6. ASSIGNEE OF SECURED PARTY (IF ANY)
NAME
MAILING ADDRESS    . N/A.
CITY    STATE    ZIP CODE

6A. SOCIAL SECURITY NO. FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO.

7. This FINANCING STATEMENT covers the following types or items of property (if crops or timber, include description of real property on which growing or to be grown and name of record owner of such real estate, if fixtures, include description of real property to which affixed or to be affixed and name of record owner of such real estate; if oil, gas or minerals, include description of real property from which to be extracted.

All of the debtor's Accounts Receivable and inventory wherever located, whether now owned or howsoever acquired.

7A. _____
SIGNATURE OF RECORD OWNER

7B. _____
(TYPE) RECORD OWNER OF REAL PROPERTY

7C. $ _____
MAXIMUM AMOUNT OF INDEBTEDNESS TO BE SECURED AT ANY ONE TIME (OPTIONAL)

8. Check if Applicable

| A [X] Proceeds of collateral are also covered | B [ ] Products of collateral are also covered | C [ ] Proceeds of above described original collateral in which a security interest was perfected | D [ ] Collateral was brought into this State subject to security interest in another jurisdiction |

9. Check if Applicable [ ] DEBTOR IS A "TRANSMITTING UTILITY" IN ACCORDANCE WITH NRS 704.205 AND NRS 104.9403

10.    (Date) May 5, 1986

A.C. BALLARD CONCRETE COMPANY

By: _____    Owner
Jack Larson SIGNATURE(S) OF DEBTOR(S)    (TITLE)

KEYSTONE ACCEPTANCE CORPORATION

By: _____    President
Roger A SIGNATURE(S) OF SECURED PARTY (IES)    (TITLE)

12. This Space for Use of Filing Officer
(Date, Time, File Number and Filing Officer)

11. **Return Copy to**

NAME
ADDRESS
CITY, STATE
AND ZIP

Keystone Acceptance Corporation
P.O. Box 80480
Las Vegas, Nevada  89180

(2) FILING OFFICER COPY - ACKNOWLEDGMENT

Filing Officer is requested to note file number, date and hour of filing on this copy and return to the above party

THIS SPACE FOR USE OF FILING OFFICER

